DARYL BUNKLEY *v.* COMMISSIONER OF CORRECTION
(14305)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and BERDON, Js.[1]

---

[1] This case was orally argued on December 5, 1991, before a panel of this court consisting of Justices Shea, Glass, Covello, Borden and Berdon. Subsequently, the court determined that the case was appropriate for en banc consideration. Chief Justice Peters and Justice Callahan were added to the panel and considered the case upon full review of the record, briefs and transcript of the December 5, 1991 oral argument.

Argued December 5, 1991—decision released June 3, 1992

*Mickey E. Harris,* certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Todd D. Fernow* and *Sharon Lewis* and *Gary M. Case,* certified legal interns, for the appellant (petitioner).

*James M. Ralls,* assistant state's attorney, for the appellee (respondent).

BORDEN, J. In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. *Phillips* v. *Warden,* 220 Conn. 112, 132, 595 A.2d 1356 (1991). Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* v. *Washington,* 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984). In this context, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," does not require the petitioner to show that "counsel's deficient conduct more likely than not altered the outcome in the case." Id., 693. Rather, it merely requires the petitioner to estab-

lish "a probability sufficient to undermine confidence in the outcome." Id., 694.

The dispositive issue of this habeas corpus appeal is whether, under the facts of this case, the petitioner suffered "prejudice" within the meaning of *Strickland* by the failure of his appellate counsel to raise on appeal a claim that the trial court, at his criminal trial, gave an improper instruction to the jury. The petitioner claims that the state's burden of proof was improperly diluted when the jury was told that, in drawing an inference from circumstantial evidence, "the inference asked to be drawn is not only logical and reasonable, but it is more probable than not that the fact to be inferred is true." The petitioner appeals[2] from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. He claims that the court improperly rejected his claim of ineffective assistance of appellate counsel[3] because as a matter of law: (1) the failure of his counsel to raise on appeal a claim of dilution of the burden of proof, under this court's decision in *State v. Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), and its progeny, established prejudice; and (2) that same failure also established his counsel's deficient performance.

[2] The petitioner appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

[3] In the habeas court, the petitioner also raised a claim of ineffective assistance of trial counsel, based on that counsel's failure to take exception to the same instruction. The habeas court concluded that, because such a claim of instructional impropriety would have been reviewable on appeal under *State v. Evans,* 165 Conn. 61, 327 A.2d 576 (1973), as modified by *State v. Golding,* 213 Conn. 233, 567 A.2d 823 (1989), the petitioner had not established prejudice with respect to his trial counsel's conduct. The petitioner also claimed in the habeas court that the jury instruction at issue had deprived him of his due process right to a fair trial. The habeas court rejected that claim. The petitioner has not challenged these conclusions of the habeas court in this appeal.

We hold that the petitioner did not suffer prejudice, and, therefore, we affirm the judgment.[4]

The petitioner's claims arise out of the direct appeal of his conviction of three counts of manslaughter in the second degree in violation of General Statutes § 53a-56 (a) (1), and two counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (2).[5] *State* v. *Bunkley*, 202 Conn. 629, 522 A.2d 795 (1987). The petitioner filed this habeas corpus petition challenging the performance of his counsel on that appeal. He claims that his counsel was ineffective in failing to raise the claim that "the trial court [had] wrongfully charged the jury regarding the standard by which the jury can draw inferences," and that he was prejudiced because, had his counsel raised such an argument on appeal, his conviction would have been reversed and a new trial would have been ordered.

The habeas court found the following facts. In August, 1982, the petitioner was arrested and was later charged with three counts of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), and one count of failure to stop when signalled in violation of General

---

[4] The habeas court, having concluded that the petitioner had not established prejudice, did not find "the underlying historical facts"; *Phillips* v. *Warden*, 220 Conn. 112, 131, 595 A.2d 1356 (1991); and did not reach a conclusion regarding the performance of the petitioner's appellate counsel. Since we agree with the habeas court that the petitioner has not established prejudice, it is unnecessary to consider the petitioner's claim regarding that performance or to remand to the habeas court for a finding of those facts.

[5] General Statutes § 53a-56 (a) (1) provides: "A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person."

General Statutes § 53a-61 (a) (2) provides: "A person is guilty of assault in the third degree when . . . (2) he recklessly causes serious physical injury to another person."

Statutes § 14-223 (b).[6] These charges arose out of the
following factual scenario. At approximately noon on
August 13, 1982, after attempting to shoplift some
clothes from a store on Silver Lane in East Hartford,
the petitioner left the store and drove from the store
parking lot at a high rate of speed in a Lincoln auto-
mobile. Officer Richard Rohner of the East Hartford
police department, who was in a police vehicle, saw the
petitioner's car speed through the parking lot onto
Forbes Street. Rohner followed the car and signalled
with both his siren and flashing light for the petitioner
to stop, but he failed to do so, went through a red light
and turned west onto Silver Lane. Silver Lane is a four

---

[6] General Statutes § 53a-55 (a) (3) provides: "A person is guilty of man-
slaughter in the first degree when . . . (3) under circumstances evincing
an extreme indifference to human life, he recklessly engages in conduct
which creates a grave risk of death to another person, and thereby causes
the death of another person."

General Statutes § 53a-59 (a) (3) provides: "A person is guilty of assault
in the first degree when . . . (3) under circumstances evincing an extreme
indifference to human life he recklessly engages in conduct which creates
a risk of death to another person, and thereby causes serious physical injury
to another person."

General Statutes (Rev. to 1981) § 14-223 (b) provides: "No person, when
signalled to stop by an officer in a police vehicle using an audible signal
device or flashing or revolving lights, shall operate his motor vehicle in inten-
tional or wanton disregard of such signal so as to interfere with or endanger
the operation of the police vehicle or any other motor vehicle or endanger
or cause damage to property or person, or shall he increase his speed in
an attempt to escape or elude such police officer. Any person who violates
this subsection shall be fined not less than one hundred dollars nor more
than one thousand dollars and shall have his motor vehicle operator's license
suspended for two months for the first offense, except that the commis-
sioner of motor vehicles may, after a hearing, as provided for in subsec-
tion (k) of section 14-111, and upon a showing of compelling mitigating
circumstances, reinstate his license before the expiration of such two-month
period. For any subsequent offense he shall be fined not less than five hun-
dred dollars nor more than five thousand dollars, and shall have his motor
vehicle operator's license suspended for not less than six months nor more
than two years, except that said commissioner may, after a hearing, as pro-
vided for in subsection (k) of section 14-111, and upon a showing of com-
pelling mitigating circumstances, reinstate his license before such period."

lane highway that runs generally east and west. At this time, traffic was heavy in both directions.

Rohner pursued the petitioner's car and radioed for assistance. Officer Patricia Topliff responded to Rohner's call and joined the chase on Silver Lane. Rohner pursued the petitioner at speeds reaching sixty miles per hour. During the chase, the petitioner passed another vehicle on the right, cut over to the left and struck that vehicle. The petitioner then swerved back and forth in the westbound lanes, went off the road, and crossed the center line into the eastbound lane and straddled the center line, missing another vehicle by inches.

The petitioner's car then crossed over the center line into the eastbound lane and struck head on a car driven by Eleanor Mitchell, killing Mitchell and her two daughters, and seriously injuring her son and his friend, who were passengers in the Mitchell vehicle. The petitioner admitted that at the moment of impact he was driving the Lincoln at approximately sixty to seventy miles per hour.

At his trial in May, 1984, the petitioner conceded that he was guilty of failure to stop when signalled and of the lesser included offenses of misconduct with a motor vehicle in violation of General Statutes § 53a-57, or negligent homicide with a motor vehicle in violation of General Statutes § 14-222a,[7] but argued that he was

---

[7] General Statutes (Rev. to 1981) § 53a-57 provided: "MISCONDUCT WITH A MOTOR VEHICLE: CLASS D FELONY. (a) A person is guilty of misconduct with a motor vehicle when, with criminal negligence in the operation of a motor vehicle or in consequence of his intoxication while operating a motor vehicle, he causes the death of another person. For the purposes of this section, 'intoxication' shall include intoxication by alcohol or by drug or both.

"(b) Misconduct with a motor vehicle is a class D felony."

General Statutes (Rev. to 1981) § 14-222a, as amended by Public Acts 1981, No. 81-26, provided: "NEGLIGENT HOMICIDE WITH A MOTOR VEHICLE. Any person who, in consequence of the negligent operation of a motor vehicle, causes the death of another person shall be fined not more than one thousand dollars or imprisoned not more than six months or both."

not guilty of the manslaughter and assault charges.[8] In its charge to the jury on circumstantial evidence, the trial court included the following language, which forms the crux of the petitioner's claim in this case: "This rule [of circumstantial evidence] involves the offering of evidence of facts from which you are asked to infer the existence of another fact, or set of facts. Such an inference may be made, provided two elements in the application of this rule are satisfied: first, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt, and second, that the inference asked to be drawn is not only logical and reasonable, *but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true.*" (Emphasis added.) The jury found the petitioner guilty of the lesser included offenses of manslaughter in the second degree and assault in the third degree.[9]

In his direct appeal from the ensuing judgment of conviction, the petitioner was represented by attorney Jon Schoenhorn,[10] who was assisted on the brief by attorney Kathleen Murrett. Schoenhorn was responsible for the handling of the appeal and wrote the brief, except for two issues written by Murrett and edited by Schoenhorn. Although they raised seven claims of trial court error, the petitioner's appellate counsel did not invoke *State* v. *Rodgers,* supra, to challenge the trial court's instruction on circumstantial evidence. See *State* v. *Bunkley,* supra, 632. It is undisputed that *State* v. *Rodgers,* supra, was decided on December 17, 1985; see id.; and that the petitioner's direct appeal was

---

[8] The petitioner's trial counsel conceded in his argument to the jury that the petitioner was guilty of failure to stop when signalled, and of the offenses of misconduct with a motor vehicle and negligent homicide, as lesser included offenses of the manslaughter and assault charges facing the petitioner.

[9] The petitioner was also convicted of failure to stop when signalled, but that conviction was not involved in his direct appeal or in this appeal.

[10] Schoenhorn also assisted the petitioner's chief trial counsel at the trial.

argued in this court on November 4, 1986. *State* v. *Bunkley,* supra. This court affirmed the petitioner's conviction on the direct appeal. Id.

Having found these facts, the habeas court in this case focused on the prejudice requirement of *Strickland.* The habeas court read that requirement to mean that, where a habeas petitioner challenges the effectiveness of his appellate counsel, he must establish that, but for appellate counsel's unprofessional errors, the result of his trial would have been different. Thus, considering that the petitioner was required to establish "by a reasonable probability, that the jury would have acquitted him but for the [unchallenged] instruction," the habeas court concluded that he had not met that requirement because "[t]he evidence submitted indicates otherwise." Accordingly, the habeas court dismissed the petition. This appeal followed.

I

We first consider the petitioner's claim that the habeas court, when considering the prejudice prong of *Strickland,* improperly focused on the probable result of the petitioner's trial rather than the probable result of his appeal. The petitioner argues that, under *Strickland,* prejudice resulting from the deficient performance of appellate counsel means that there is a reasonable probability that, but for that performance, the result of the appeal would have been different—the appeal would have resulted in a reversal of the conviction and a new trial.

The petitioner follows this argument with the contention that, gauged by this standard, he has established prejudice because on his direct appeal this court "would have reversed his conviction on all counts if the Court had heard a claim under the doctrine of *State*

v. *Rodgers,* supra."[11] He points out that in both his case
and *Rodgers* the primary dispute at trial involved the

[11] In *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), we reversed
a conviction on the basis that an instruction, identical to the one at issue
in the present case, had impermissibly diluted the state's burden of proof.
Eschewing the traditional scope of appellate review of improper jury instruc-
tions, namely, that they are to be considered as a whole in order to deter-
mine whether the jury was misled, we concluded that "[w]e cannot bring
the case within the purview of [that] rule"; id., 58; because much of the
state's case was circumstantial "bearing on the issue of criminal intent."
Id. *Rodgers,* however, was preceded by, but did not refer to, *State* v. *Red-
dick,* 197 Conn. 115, 130-33, 496 A.2d 466 (1985), cert. denied, 474 U.S.
1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986), where we had rejected a
challenge to the same "more probable than not" jury instruction and
affirmed the conviction. In *Reddick,* we subjected the instruction to the
"well established" principle that "individual instructions are not to be judged
in artificial isolation from the overall charge"; id., 132; and we concluded
that any dilution of the state's burden of proof, "if it existed, was cured
by the court's repeated correct instructions." Id., 133.

Thereafter, in *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86 (1986),
cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), we recon-
ciled the apparent contradiction between *Rodgers* and *Reddick* by adopt-
ing the analysis put forth by the Appellate Court in *State* v. *Farrar,* 7 Conn.
App. 149, 155-56, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229
(1986), which distinguished between cases in which the principal factual
issue was intent and cases in which the principal issue was identity. Under
that analysis, where the principal issue at trial was intent, characteristi-
cally proven by circumstantial evidence, this court was to subject the instruc-
tion to "close scrutiny"; *State* v. *Whelan,* supra; rather than to consider
it in the context of the overall charge. Where, however, the principal issue
was identity, not classically dependent on circumstantial evidence, we would
consider the improper instruction on circumstantial evidence in the con-
text of the entire charge to determine whether it was reasonably possible
that the jury was misled. Id.

Subsequently, in *State* v. *Robinson,* 204 Conn. 207, 210, 527 A.2d 694
(1987), we elaborated on the meaning of "close scrutiny": "Where the prin-
cipal factual issue at trial is intent, which is typically proven by circum-
stantial evidence, 'we will closely scrutinize the court's instructions' on
circumstantial evidence, *in isolation from the remainder of the charge,* to
determine whether the court misled the jury as to the state's burden of
proof." (Emphasis added.) In *Robinson,* however, since the principal issue
was not intent but identity, we reviewed the instruction in the context of
the charge as a whole, and concluded that it was not reasonably possible
that the jury was misled. Id., 210-11. Nonetheless, the dictum in *Robinson*
made explicit what had been implicit in *Whelan,* namely, that in an "intent"

mental state of the accused, that in both cases the resolution of that dispute depended on the jury's assessment of circumstantial evidence, and that the trial court in his case gave a charge on circumstantial evidence identical to the charge held to be reversible error in *Rodgers.*

Relying, therefore, on this court's analysis in *State v. Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), the petitioner argues that the offending portion of the trial court's charge would have been viewed by this court in isolation from the remainder of the charge and that, so viewed, it would have yielded a reversal of his conviction and a new trial. This is particularly so, the petitioner asserts, because the trial court "augmented the constitutional harm of its instruction" by specifically permitting the jury to use inferences drawn from circumstantial evidence to arrive at the ultimate elements of the offenses charged. Furthermore, the petitioner argues, in light of his trial counsel's concession of his guilt of the lesser included offense of negligent homicide; see footnote 8, supra; the jury's determination of his mental state was the "sole determinant" regarding whether he was guilty of the crimes originally charged, of the lesser included offenses of which he was found guilty, or of the lesser included offenses of which he conceded his guilt. Therefore, the petitioner contends that since this court would have

---

case the "more probable than not" instruction would mandate a reversal of the conviction irrespective of its likely effect on the jury when viewed in the context of the entire charge. For cases after *Robinson,* see *State v. McDonough,* 205 Conn. 352, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988), *State v. Gonzalez,* 205 Conn. 673, 535 A.2d 345 (1987), and *State v. James,* 211 Conn. 555, 560 A.2d 426 (1989). We do not in this case decide that the rule of *State v. Rodgers,* supra, no longer has full validity on a direct appeal, as distinguished from a collateral attack on a judgment.

reversed his conviction and granted him a new trial, he has established prejudice under *Strickland*.

The respondent argues, on the contrary, that "[t]he petitioner must show a reasonable probability that the result at trial would have been different." Thus, under the respondent's view, the petitioner must establish not only that he would have been entitled to a reversal on appeal, but also "that the [unchallenged] instruction likely affected the result at trial." The respondent also argues that, if we were to focus on the result of the appeal, we should reconsider the *Rodgers* line of authority, on which the petitioner relies, that on appeal the jury instruction in question must be viewed in isolation in a case where, as here, mental state was the principal issue in the petitioner's trial. The respondent argues that the standard of review of such an instruction purportedly adopted by this court in *Rodgers* and its progeny was incorrect, and that under the proper standard of review the petitioner would not have been entitled to a reversal of his conviction even if his appellate counsel had raised the claim. Therefore, the respondent contends, the petitioner has not established prejudice.

We agree with the respondent that in this case the proper focus under the prejudice prong of *Strickland* is the result of the trial.[12] We conclude that, in order for the petitioner to establish prejudice resulting from his appellate counsel's deficient performance, he must establish that, as a result of that performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. Put another way, he must establish that, because of the failure of his appellate counsel to raise a *Rodgers* claim, there is a reasonable probability that he remains burdened by an unreliable determination of his guilt.

---

[12] This conclusion renders it unnecessary to reach the respondent's invitation to us to reconsider the *Rodgers* line of cases. See footnote 11, *supra*.

In *Strickland* v. *Washington,* supra, 671, the United States Supreme Court "consider[ed] the proper standards for judging a criminal defendant's contention that the Constitution requires a conviction . . . be set aside because counsel's assistance at the trial . . . was ineffective." In the context of a claim of ineffective assistance of trial counsel, the court held that such a contention "has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687.

The constitutional right of a criminal defendant to the effective assistance of counsel also includes the right to such assistance on the defendant's first appeal as of right. *Evitts* v. *Lucey,* 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). We have adopted the two-part *Strickland* analysis in the context of a claim of ineffective assistance of appellate counsel. *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990); *Valeriano* v. *Bronson,* 209 Conn. 75, 83–84, 546 A.2d 1380 (1988). Thus, a habeas corpus petitioner seeking to establish such ineffectiveness must prove both deficient performance and prejudice resulting therefrom. *Sekou* v. *Warden,* supra. Neither the United States Supreme Court nor this court, however, has specifically defined the meaning of "prejudice" in the context of a claim of ineffective assistance of appellate counsel.[13]

[13] We have in dictum indicated that prejudice from appellate counsel's deficient performance must be gauged by the outcome of the trial that yielded the appeal. In *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990), we referred to the prejudice requirement as follows: "[T]his lack

We find convincing guidance, however, in the fundamental rationale of *Strickland,* namely, the overarching emphasis on the necessity for ensuring the reliability of the verdict that is under attack. The court in *Strickland* repeatedly defined prejudice in terms of that necessity.[14] Given that emphasis, it cannot be

of competency contributed so significantly to the affirmance of [the petitioner's] conviction *as to have deprived him of a fair appeal, thus causing an unreliable conviction to stand."* (Emphasis added.) This language echoed similar language in *Valeriano* v. *Bronson,* 209 Conn. 75, 84, 546 A.2d 1380 (1988), where we stated: "[O]nce a defendant is denied *a fair appeal that causes an unreliable conviction to stand under Strickland* v. *Washington,* it is obvious that his ineffective counsel worked to his actual and substantial disadvantage, infecting his [appeal] with errors of constitutional dimension." (Emphasis added; internal quotation marks omitted.)

The other jurisdictions that have considered this issue are far from conclusive or unanimous. Two federal circuits have determined that the proper focus is the result of the appeal, and one state Supreme Court has determined that the proper focus is the result of the trial. See *United States* v. *Williams,* 934 F.2d 847, 853 (7th Cir. 1991) (under *Strickland,* "outcome of the proceeding" means outcome of appeal); *Sharp* v. *Puckett,* 930 F.2d 450, 453 (5th Cir. 1991) (under *Strickland,* prejudice means that outcome of appeal would have been different); *Lockhart* v. *McCotter,* 782 F.2d 1275, 1283 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S. Ct. 873, 93 L. Ed. 2d 827, reh. denied, 480 U.S. 911, 107 S. Ct. 1360, 94 L. Ed. 2d 530 (1987) (petitioner failed to demonstrate reasonable probability that, but for appellate counsel's errors, result of appeal would have been different); *Gray* v. *Greer,* 778 F.2d 350, 353 (7th Cir. 1985), vacated, 478 U.S. 1017, 106 S. Ct. 3328, 92 L. Ed. 2d 734 (1986), on remand, 800 F.2d 644 (7th Cir. 1986) (question is whether appellate counsel failed to raise issues that would have been clearly more likely to result in reversal or order for new trial); see also *Miller* v. *Keeney,* 882 F.2d 1428, 1434 n.9 (9th Cir. 1989) (assumes without deciding that outcome of proceeding means outcome of appeal); *Matire* v. *Wainwright,* 811 F.2d 1430, 1439 n.8 (11th Cir. 1987) (declining to decide whether focus is outcome of appeal or trial); but see *Gering* v. *State,* 382 N.W.2d 151, 156 (Iowa 1986) (prejudice resulting from conduct of trial or appellate counsel measured by probable consequences at trial).

[14] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial *cannot be relied on as having produced a just result."* (Emphasis added.) *Strickland* v. *Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Prejudice "result[s] from a breakdown in the adversary process *that renders the result unreliable."*

doubted that, if the issue before us were whether the petitioner had been prejudiced by his *trial* counsel's failure to object to the "more probable than not" language in the jury instructions, rather than whether he was prejudiced by his *appellate* counsel's failure to raise on appeal precisely the same improper instruction by the trial court, the appropriate inquiry would be whether there was a reasonable probability that, but for his trial counsel's failure, the verdict would have been different.

Moreover, that inquiry into the prejudice resulting from the petitioner's trial counsel's performance would require us to consider not solely the offending language of the instruction in isolation from the remainder of the charge, but also "the totality of the evidence before the . . . jury." *Strickland* v. *Washington,* supra, 695. It would also require us to consider whether particular language of the instruction "had a pervasive effect on the inferences to be drawn from the evidence," or whether it had, on the contrary, "an isolated, trivial effect." Id., 695–96. Furthermore, it would require us to take into account that "a verdict or conclusion only weakly supported by the record is more likely to have

(Emphasis added.) Id., 687. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance *necessary to justify reliance on the outcome of the proceeding.* Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." (Emphasis added.) Id., 691–92. "An ineffective assistance claim asserts the absence of one of the crucial assurances *that the result of the proceeding is reliable* . . . ." (Emphasis added.) Id., 694. "A reasonable probability [of a different result] is a probability *sufficient to undermine confidence in the outcome.*" (Emphasis added.) Id. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, *the factfinder would have had a reasonable doubt respecting guilt.*" (Emphasis added.) Id., 695. "In every case the court should be concerned with whether, despite the strong presumption of reliability, *the result of the particular proceeding is unreliable* because of a breakdown in the adversarial process that our system counts on *to produce just results.*" (Emphasis added.) Id., 696.

been affected by errors than one with overwhelming record support." Id., 696. Finally, it would not require in a habeas proceeding that we find the error of trial counsel harmless beyond a reasonable doubt, despite the constitutional nature of the misstatement in the charge that trial counsel had failed to call to the court's attention, for which the harmlessness beyond a reasonable doubt standard would be applicable on direct appeal. Thus, "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." Id.

We conclude that the same inquiry should apply to this case, where the petitioner seeks, by way of an attack on his appellate counsel's performance, the same remedy that he sought by way of a contemporaneous attack on his trial counsel's performance; see footnote 3, supra; namely, a new trial. He seeks that new trial, moreover, by way of the same claimed error by the trial court, namely, the inclusion of the "more probable than not language" in the jury charge. By either route—ineffective assistance of trial counsel or of appellate counsel—his aim is to overturn the jury's verdict. We see no principled reason why he should have a different, more relaxed,[15] burden of establishing prejudice

---

[15] In most cases, the question of whether the result of an appeal would have been different would be essentially the same as the question of whether the result of the trial would have been different. This is because, ordinarily, the appellate standard for determining whether a particular trial error requires reversal focuses on the likely effect of that error on the verdict. See, e.g., State v. Ortiz, 217 Conn. 648, 667, 588 A.2d 127 (1991) (reversal of conviction based on unconstitutionally improper jury instruction appropriate only when it is reasonably possible that jury was misled by instruction). In this case, however, because of the particular direction that the Rodgers line of cases took; State v. Rodgers, 198 Conn. 53, 502 A.2d 360 (1985); see footnote 11, supra; the question of whether the result of the appeal would have been different is arguably different from the question

simply because he couches his claim in terms of the misconduct of his appellate counsel rather than of his trial counsel. In either case his burden should be the same: to establish that, based upon the totality of the evidence before the jury and upon the likely effect of the instructional error, as a result of the error of the trial court that was not brought to the attention of either that court or this court on his direct appeal, there is a probability sufficient to undermine confidence in the verdict that he seeks to overturn.[16]

This conclusion, moreover, is consistent with the nature of the relationship between a trial and an appeal. "The trial of a criminal case, and the ensuing appeal from a judgment of conviction, are not separate and distinct proceedings divorced from one another. They are part of the continuum of the process of adjudication. Stated in the most elementary terms, the trial seeks to determine whether the state has proven the defendant guilty beyond a reasonable doubt. The appeal seeks to determine whether, in the process of that adjudication, the trial judge committed error which requires either a new trial or a judgment of acquittal." *State v. Cosby*, 6 Conn. App. 164, 173–74, 504 A.2d 1071 (1986). " 'The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free.' "

---

of whether the verdict would have been different, since, as the petitioner argues, under *Rodgers*, we would be required to consider the language of the charge in isolation from the remainder of the instructions and, thus, in isolation from its likely effect on the jury.

[16] We recognize that, where the prejudice claimed by a habeas corpus petitioner is that he was deprived of his entire appeal because his appellate counsel failed to file papers timely, this standard of prejudice would not apply. In that case, the remedy sought by the petitioner would not be a new trial but a first appeal as of right, and it would be impossible to determine whether the verdict was unreliable until the appeal had been heard. In such a case, therefore, prejudice would be established by the absence of his appeal.

*Evitts* v. *Lucey,* supra, 394, quoting *Herring* v. *New York,* 422 U.S. 853, 862, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975).

An appeal is no less a part of that adversary system than is a trial. Indeed, the appellate harmless error doctrine is rooted in that fundamental purpose of our criminal justice system—to convict the guilty and acquit the innocent. " 'The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles,* 422 U.S. 225, 230 [95 S. Ct. 2160, 45 L. Ed. 2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' " *Rose* v. *Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

Thus, since "[t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding"; *Strickland* v. *Washington,* supra, 691–92; that "proceeding" must be regarded as the entire continuum of the adjudicatory process, both trial and appeal. The petitioner's argument would break this continuum by applying a different standard of prejudice to the misconduct of his appellate counsel from that of his trial counsel, despite the fact that his ultimate goal remains the same—to gain a new trial because of the purported unreliability of the result of the first trial.

Finally, it is significant that the petitioner seeks a new trial by way of a writ of habeas corpus. The principal purpose of the writ of habeas corpus is to serve as "a bulwark against convictions that violate 'fun-

damental fairness.' " *Engle* v. *Isaac,* 456 U.S. 107, 126, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982), quoting *Wainwright* v. *Sykes,* 433 U.S. 72, 97, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977) (Stevens, J., concurring). This court has taken the same view. "To mount a successful collateral attack on his conviction a prisoner must demonstrate a miscarriage of justice or other prejudice and not merely an error which might entitle him to relief on appeal. *Hill* v. *United States,* 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417, reh. denied, 369 U.S. 808, 82 S. Ct. 640, 7 L. Ed. 2d 556 (1962)." *D'Amico* v. *Manson,* 193 Conn. 144, 156–57, 476 A.2d 543 (1984); see also *Bowers* v. *Warden,* 19 Conn. App. 440, 441, 562 A.2d 588, cert. denied, 212 Conn. 817, 565 A.2d 534 (1989). In order to demonstrate such a fundamental unfairness or miscarriage of justice, the petitioner should be required to show that he is burdened by an unreliable conviction. There is nothing fundamentally unfair about applying the same standard of prejudice to the performance of his appellate counsel that we would be required to apply to the performance of his trial counsel, particularly where in either case both the trial error of which he complains, namely, the improper instruction, and the remedy he seeks, namely, a new trial, are the same.

As we have stated in a similar context, there are special problems that are likely to arise relating to the feasibility of a second trial when a conviction is set aside by a habeas court rather than by an appellate court. These problems are related mainly to the more extended delay of the second trial that frequently results from a reversal of a conviction by a habeas court. There is no statute of limitation or other time limit that would bar a habeas petition. *United States* v. *Smith,* 331 U.S. 469, 475, 67 S. Ct. 1330, 91 L. Ed. 1610 (1947). Ordinarily the petition may not be filed until appellate remedies have been exhausted, lest the

petitioner be charged with a deliberate bypass of an appeal. An additional record must be created in the habeas court, which may require extensive testimony. If the petitioner is successful in overturning his conviction, another appeal is almost inevitable.

"A direct appeal following a conviction, on the other hand, is subject to strict time limits at each stage of the proceeding. Except for extraordinary cases, an appeal in this state is ordinarily determined within approximately one year from the date it was filed. The greater time lapse that results when a second trial is ordered by a habeas court has a serious impact on the availability of witnesses and other evidence for the second trial. Memories fade with the passage of time, exhibits are lost, and other evidence is less likely to be available." *Johnson* v. *Commissioner,* 218 Conn. 403, 416, 589 A.2d 1214 (1991).

The United States Supreme Court has also adverted to the "significant costs" of collateral review of a criminal conviction by way of a writ of habeas corpus. *Engle* v. *Isaac,* supra, 126. That review "extends the ordeal of trial for both society and the accused," frustrating the interest in ensuring both that at some point litigation will end and that "attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community." (Internal quotation marks omitted.) Id., 127. Furthermore, "[l]iberal allowance of the writ . . . degrades the prominence of the trial itself . . . [which] concentrates society's resources at one time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence." (Internal quotation marks omitted.) Id. Finally, "writs of habeas corpus frequently cost society the right to punish admitted offenders. Passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible. While a

habeas writ may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution." Id., 127–28.[17]

These considerations counsel strongly in favor of requiring a habeas corpus petitioner who seeks to establish prejudice from his appellate counsel's performance to show that, as a result of that performance, it is reasonably probable that he remains burdened by an unreliable conviction. Indeed, the facts of this case highlight those very concerns. The petitioner seeks to overturn the verdict that was rendered by a jury in May, 1984, eight years ago, regarding his conduct in August, 1982, nearly ten years ago.

## II

We therefore turn to the conclusion of the habeas court that "[t]he petitioner has failed to show [that] 'there is a reasonable probability that, absent the [improper jury instruction], the factfinder would have had a reasonable doubt respecting guilt.' " (Emphasis omitted.) We agree with this conclusion.

The differentiating element between the offenses of which the petitioner was convicted and those of which he sought to persuade the jury of his guilt was the petitioner's state of mind. At his trial, the state sought to prove that the petitioner had acted recklessly with respect to the deaths and injuries that he caused, that is, he was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that such result[s]

---

[17] It is true, as the dissent notes; see dissent, footnote 1, infra; that one who challenges his conviction on the basis of ineffective assistance of counsel must do so by way of a petition for a writ of habeas corpus. Noting that, however, does not diminish the validity of the reasons why a petitioner who mounts such a collateral challenge should be required to show that he is burdened by an unreliable conviction. Of course, despite the hyperbolic "fear" expressed by the dissent in the same footnote, we contemplate no "assault on the writ of habeas corpus as a vehicle for justice."

[would] occur." General Statutes § 53a-3 (13). The peti-
tioner, on the contrary, sought to persuade the jury that
he had acted with no more than criminal negligence,
that is, he "fail[ed] to perceive a substantial and
unjustifiable risk that such result[s] [would] occur."
General Statutes § 53a-3 (14). We conclude that there
is no reasonable probability that the jury was misled
by the trial court's improper instruction into misapply-
ing the state's burden of proof regarding the defend-
ant's mental state.

First, the evidence of recklessness, rather than of
criminal negligence, was very strong if not overwhelm-
ing. The petitioner, fleeing the police, went through
a red light and drove down a four lane roadway, with
heavy noontime traffic in both directions. While travel-
ing at speeds ranging from thirty-five to seventy miles
per hour, he passed a vehicle on the right, cut to the
left and hit that vehicle, swerved back and forth in the
westbound lane, left the road, crossed over into the
eastbound lane, and straddled the center line missing
another vehicle by inches. Then, traveling at sixty to
seventy miles per hour, he crossed over the center line
into the eastbound lane, where he struck the victims'
vehicle head on. The evidence strongly supports the
jury's actual finding that the petitioner's state of mind
was one of awareness and conscious disregard of the
risks created by his conduct rather than a negligent
failure to perceive these risks.

Furthermore, the trial court's instructions consume
fifty pages of transcript. The improper language was
used only once. The court instructed the jury that the
state had the burden to establish all the elements of
the crimes charged, and of any lesser included offenses,
beyond a reasonable doubt. Included in those elements
were the various mental states necessary to estab-
lish guilt of the crimes charged and of each of the
lesser included offenses. The court fully and properly

instructed the jury on the meaning of proof beyond a reasonable doubt, with no hint of a reference to a lesser standard. Throughout its instructions, the court specifically admonished the jury no less than thirty-one times that guilt must be established beyond a reasonable doubt. Furthermore, the court instructed the jury, unduly favorably to the petitioner, that "if a piece of evidence offered is capable of two reasonable constructions, one of which is consistent with innocence, it is to be given that construction"; see *In re Keijam T.*, 221 Conn. 109, 602 A.2d 967 (1992); and that "the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt." See *State* v. *Castonguay*, 218 Conn. 486, 507–508, 590 A.2d 901 (1991); see also *State* v. *McDonough*, 205 Conn. 352, 363–64, 533 A.2d 857 (1987) (*Callahan, J.*, concurring), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d 238 (1988).

Under all these circumstances, there is no reasonable likelihood that the jury was misled by the one offending clause of one sentence of the court's instructions into applying a diluted burden of proof to the state's case regarding the defendant's state of mind. This record does not disclose a probability sufficient to undermine our confidence in the jury's verdict.

The judgment is affirmed.

In this opinion PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js., concurred.

BERDON, J., dissenting. I disagree with the majority's conclusion that in order to prove prejudice under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674, reh. denied, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (1984), the petitioner must estab-

lish that, because of appellate counsel's deficient performance, "there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal." In other words, instead of only proving that the ineffective assistance of *appellate* counsel would have produced a different result in the *appeal*, the petitioner must go further and prove that the appellate counsel's failure leaves in place "an unreliable determination of his guilt."

The majority finds support for its conclusion in an Iowa Supreme Court decision; *Gering* v. *State,* 382 N.W.2d 151, 156 (Iowa 1986); and rejects the judgment of the only two federal circuits that have ruled on the issue. See *United States* v. *Williams,* 934 F.2d 847, 853 (7th Cir. 1991) (under *Strickland,* "result of the proceeding" means outcome of appeal); *Sharp* v. *Puckett,* 930 F.2d 450, 452–53 (5th Cir. 1991) (under *Strickland,* prejudice means that outcome of appeal would have been different); *Lockhart* v. *McCotter,* 782 F.2d 1275, 1283 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S. Ct. 873, 93 L. Ed. 2d 827, reh. denied, 480 U.S. 911, 107 S. Ct. 1360, 94 L. Ed. 2d 530 (1987) (petitioner failed to demonstrate reasonable probability that, but for appellate counsel's errors, result of appeal would have been different); *Gray* v. *Greer,* 778 F.2d 350, 353 (7th Cir. 1985), vacated, 478 U.S. 1017, 106 S. Ct. 3328, 92 L. Ed. 2d 734 (1986), on remand, 800 F.2d 644 (7th Cir. 1986) (question is whether appellate counsel failed to raise issues that "would have been clearly more likely to result in reversal or an order for a new trial"); see also *Miller* v. *Keeney,* 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).

It stands to reason that, when determining whether there was ineffective assistance of appellate counsel, we should focus on whether the result of the appeal

would have been different.[1] "The right to appellate counsel is now firmly established. . . . *Strickland* v. *Washington,* [supra,] established the standard for ineffective assistance of counsel, and though it is phrased in terms of ineffective assistance of trial counsel, it can be used as a basis for establishing a standard for effective assistance of appellate counsel. . . . Had appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance. If an issue which was not raised may have resulted in a reversal of the conviction, or an order for a new trial, the failure was prejudicial." (Citations omitted.) *Gray* v. *Greer,* supra, 800 F.2d 646. In the present case, appellate counsel failed to raise an issue that, had it been raised, would have resulted in a new trial for the petitioner. That should be the remedy on this appeal. The practical result of the majority's decision today is that if the defendant is fortunate enough to have competent appellate counsel, he or she will get a new trial when there is reversible error. If, however, the defendant is unfortunate to have been assigned or has retained appellate counsel who fails to raise the same issue that, if properly raised, would on appeal have resulted in a new trial, he or she will have the additional burden of proving that the counsel's failure undermined the reliability of the conviction.

Finally, it appears to me that the majority in its footnote 11, is setting the stage for a 180 degree reversal

---

[1] To support its conclusion, the majority notes that it is "significant" that the petitioner sought "a new trial by way of a writ of habeas corpus." It should, however, go without saying that a claim of ineffective assistance of counsel may only be pursued on a petition for a writ of habeas corpus. *State* v. *Leecan,* 198 Conn. 517, 542, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Indeed, when the claim is one of ineffective assistance of *appellate* counsel, the only possible avenue of review is by way of habeas corpus. Therefore, I fear that the true purpose of this dicta is the beginning of an assault on the writ of habeas corpus as a vehicle for justice.

of *State* v. *Rodgers,* 198 Conn. 53, 502 A.2d 360 (1985), for direct appeals. In *Rodgers,* the trial court, while instructing the jury on circumstantial evidence, stated that an inference may be drawn if " 'it is more probable that the fact to be inferred is true.' " Id., 57. This court reversed the defendant's conviction on the basis that this instruction, which is identical to the one at issue in the present appeal, impermissibly diluted the state's burden of proof. In reversing the conviction, we refused to follow the traditional route of reading the charge in its entirety to determine whether the jury was apt to have been misled by the instruction. We specifically held that "[t]here exists such a contradiction between the erroneous instruction and the admixture of correct doctrine that as a whole it cannot be said that the incorrect statement did not influence the jury." Id., 59. In *State* v. *Whelan,* 200 Conn. 743, 757, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), this court reasoned that "[w]here the principal factual issue is intent, which is characteristically proven by circumstantial evidence . . . the court's instructions regarding the use of circumstantial evidence as proof of this essential element are subject to close scrutiny." (Citation omitted; internal quotation marks omitted.) Because intent is routinely proven by circumstantial evidence, the need for the rule is evident; without it, there exists the likelihood that a jury could convict a defendant of the crime charged without the state proving each element beyond a reasonable doubt. By today's decision the majority eliminates this per se *Rodgers-Whelan* rule for collateral attacks, but claims that it is still adhering to the rule for direct appeals. That defies logic. If on a direct appeal we are concerned, as we should be, that such an incorrect statement by the trial judge probably influenced the jury, notwithstanding other ameliorating instructions, so must we also be concerned when the same

issue is presented on habeas corpus. Accordingly, I fear that the stage has been set for the eventual demise of the *Rodgers-Whelan* rule.

I dissent.