[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 22, 1996 the Petitioner, Hector Soto filed an amended petition for a Writ of Habeas Corpus. The Respondent filed his return on August 23, 1996. The Petition is in two counts. In the first count the Petitioner alleges his trial counsel, Attorney David Abbamonte was ineffective in one or more of the following ways:
a) he failed to conduct an adequate pretrial investigation into the facts and witnesses in support of the State's case and Petitioner's defense;
b) failed to present the relevant testimony of witnesses in support of Petitioner's defense; and
c) failed to establish through the testimony of witnesses that the Petitioner did not commit the offense.
In the second count the Petitioner claims that he is "actually innocent" and by his conviction has suffered a CT Page 8680 miscarriage of justice which violates fundamental fairness in that the fact finding process was flawed at the criminal trial by failure to present exculpatory testimony from witnesses.
The Petitioner was found guilty of the crimes of Robbery in the First Degree and Larceny in the Second Degree after a jury trial. On March 11, 1994 the Petitioner was given a sentence of seventeen years incarceration on the Robbery charge and ten years incarceration on the larceny charge concurrent to the aforementioned sentence but consecutive to the sentence he was then serving.
The Petitioner testified that on the date of the incident he got home at approximately 8:30 p.m. He testified he helped a store owner which store was located close to his home close said store that night between 8:35 p.m. and 9 p.m. The Petitioner did not know the store owner's name. The Petitioner testified that one Aerial Rivera and one Larry Galbreth committed the crimes for which he was convicted. He claimed Aerial Rivera gave a statement to a court clerk or investigator that he (Soto) did not commit this crime. The Petitioner also claims that Aerial Rivera told Rosa Hernandez that he (Rivera) committed this crime. Rosa Hernandez is the mother of three of the Petitioner's children. Johnny Vargas testified that he and the Petitioner were being held in the "bullpen" together in Court when Aerial Rivera came by and stated to the Petitioner "why are you here, I'm the one who did it, I'm going to write a statement and try and clear your name." After Mr. Rivera said that he left according to Mr. Vargas. Mr. Vargas said he only knows the Petitioner from the time they spent in the "bullpen". The Petitioner testified that he and Mr. Vargas are in the same correctional Institute but rarely see each other. Mr. Vargas said he only knows Mr. Rivera because of the time he came by the "bullpen" as stated hereinbefore. Mr. Vargas testified that Mr. Rivera was in a second "bullpen" in court when the aforementioned events took place. The Petitioner also claims that he wanted to testified at his trial and he was not given that opportunity. He also claimed that he wanted Rosa Hernandez, her mother Gloria Hernandez, Johnny Vargas, Brian Benson and Larry Galbreth called as witnesses in his trial and they were not. He testified every time he spoke to Attorney Abbamonte about an issue in his case he was told not to worry about it.
On questioning from the court the Petitioner said that on the night of the incident Aerial Rivera came by his (Petitioner's) CT Page 8681 house and beeped his automobile horn but that the (Petitioner) did not know what he wanted. The Petitioner said he met Mr. Rivera in an employment office in August 1992 and saw him at times when he (Petitioner) was a bouncer at a bar.
The Petitioner testified that he was with Larry Galbreth on the night of the incident. He stated he last saw Mr. Galbreth in 1993 when he was in jail.
Attorney David Abbamonte, the Petitioner's trial counsel testified in this matter. He stated this was an identification case and the victim identified the Petitioner as the person who robbed her from a photo. This was a carjacking case. Attorney Abbamonte stated that the Petitioner told him he was with Larry Galbreth on the night of the offense and did not commit the crime. The Petitioner told Attorney Abbamonte that Aerial Rivera committed this crime. Attorney Abbamonte testified that the Petitioner mentioned Rosa Hernandez as a potential witness but he is not sure if he mentioned any other individuals as potential witness. At the time of trial Attorney Abbamonte had the statement of Johnny Vargas (Exhibit 1) and also the Connecticut State Police report indicating Rosa Hernandez had spoken to them about this matter. Attorney Abbamonte testified that the victim of the crime could not make an identification of Aerial Rivera. Also toward the end of the year in 1993 Rosa Hernandez told Attorney Abbamonte that she did not want to come to court. That was the last contact he had with her. Attorney Abbamonte stated he did not try and contact Aerial Rivera because in his opinion if he located him it would have helped the state's case against the Petitioner. Attorney Abbamonte testified that on the morning following this crime someone tried to use the victim's credit card at a gas station and the attendant could not identify either the Petitioner or Aerial Rivera as that person. Also Attorney Abbamonte stated Aerial Rivera's statement dated August 9, 1993 (Exhibit 2) contradicted the Petitioner's alibi that he was with Larry Galbreth on the night of the offense. Attorney Abbamonte felt that any statement by the Petitioner that Aerial Rivera committed the crime he was charged with would only strengthen the state's case against the Petitioner because there was no evidence against Mr. Rivera.
Attorney Abbamonte testified that before the trial Petitioner told him to forget about calling Larry Galbreth or Brian Benson as witnesses. After the State rested its case Attorney Abbamonte stated he went over the evidence with the Petitioner. The only CT Page 8682 evidence that the state had against the Petitioner was what the victim provided. The victim took a long time to identify the Petitioner as the perpetrator and the jury knew this according to Attorney Abbamonte. Attorney Abbamonte also stated that the Petitioner did not want to testify in the trial and he agreed with that strategy. Attorney Abbamonte did not think the Petitioner could help himself by testifying but if he wanted to testify he would have allowed him to do so. Attorney Abbamonte also stated that when Aerial Rivera was arrested subsequent to this offense he was in a car owned by the Petitioner which was similar to the one used in this crime.
Rosa Hernandez testified that on the day after this crime occurred Aerial Rivera came to her house and ask her if the sketch of the alleged perpetrator, which appeared on television that day looked like him. Ms. Hernandez said that it did not. Mr. Rivera then said "that is why I shaved my beard off" according to Ms. Hernandez. The sketch that appeared on television was that of a bearded man. Ms. Hernandez also testified that on one other occasion Aerial Rivera admitted to her that he committed the crime for which the Petitioner was convicted. She said she knew Mr. Rivera's wife and that she met him through his wife. She stated Mr. Rivera use to come to her house to see the Petitioner with whom she was living.
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992). Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden,32 Conn. App. 170, 174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable CT Page 8683 professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v. Warden, supra;Hull v. Warden, supra; Copas v. Warden, supra, 683-84."
"`To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citations omitted; internal quotation marks omitted). Siano v.Warden, supra, 98; Bunkley v. Commissioner of Correction,
supra, 454-55." Davis v. Warden, 32 Conn. App. 296,301-303, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701
(1993). Johnson v. Commissioner of Correction, 36 Conn. App. 695,701, 702 (1995).
After hearing the evidence as to the first count this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v.Washington, supra, as to any of the allegations in that count in his Amended Petition filed August 22, 1996. He has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him.
As to the second count the court also finds that he has not sustained his burden of proof an his claim of "actual innocence." There was no credible evidence introduced during this hearing which would support this claim.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge CT Page 8684