[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his amended petition of May 24, 2001, petitioner seeks a writ of habeas corpus. The first count of the petition alleges ineffective assistance of counsel. The second count alleges that petitioner has not deliberately bypassed the orderly process of direct appeal. By way of relief, petitioner requests that his sentence be vacated and such other relief as law and equity may require. At the conclusion of trial, without objection, the petition was further amended to add a third count alleging that petitioner has been denied his right to sentence review and requested that this right be reinstated. For reasons hereinafter stated, counts one and two of the petition are dismissed and the relief sought on the third count is granted.
It is not in dispute that petitioner was arrested on charges arising out of the robbery of a Saveway gasoline station in Brooklyn, Connecticut on September 8, 1997. Petitioner was charged with conspiracy to commit robbery in the first degree in violation of C.G.S. §§ 53a-48 and 53a-134
(a)(3). robbery in the first degree in violation of C.G.S. §§ 53a-8
and 53a-134 (a)(3)(4) and larceny in the third degree in violation of C.G.S. § 53a-124 (a)(2).
Attorney Mark Hauslaib was retained to represent petitioner. Attorney Hauslaib represented petitioner during pretrial proceedings and during a jury trial which ended on May 22, 1998 with petitioner being convicted of conspiracy to commit robbery in the first degree and not guilty of robbery in the first degree as an accessory and guilty of larceny in the third degree. As a result of this conviction, on July 10, 1998, petitioner was sentenced to the custody of the Commissioner of Correction for a term of 14 years on the robbery charge and a 2 year concurrent sentence on the larceny charge.
Petitioner appealed his conviction which was affirmed in a per curium decision. 56 Conn. App. 907 (2000). An application for certification was denied by the Supreme Court. 252 Conn. 946 (2000).
At present, petitioner is in the custody of respondent serving the sentence imposed. The first count of the petition alleges that petitioner's imprisonment is illegal because his conviction was the result of ineffective assistance of counsel in violation of his rights under the United States Constitution and the Constitution of the State of Connecticut.
It is petitioner's claim that Attorney Hauslaib's representation of him was constitutionally ineffective.
As a defendant in a criminal proceeding, petitioner was CT Page 7609 "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of the criminal proceeding. Strickland v.Washington, supra, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). This right arises under the Sixth and Fourteenth amendments to the United States Constitution and Article 1st, § 8 of the Connecticut Constitution." Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995).
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, supra, 466 U.S. 668. "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case . . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome . . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Only if the petitioner succeeds in this herculean task will he receive a new trial. Denby v. Commissioner of Correction, 66 Conn. App. 809,812-813 (2001).
Petitioner claims that Attorney Hauslaib was inefficient in that he failed to properly and adequately prepare the case for trial and that he failed to adequately represent petitioner at trial.
 I
Petitioner claims that in his preparation for trial the attorney failed to investigate and develop petitioners s version of the facts properly. CT Page 7610 It was petitioner's claim that he was with another person, Dee Ann Morton, on the night of the robbery and that he had spoken to his father, Michael Robichaud, Sr., on the telephone at about the time the robbery took place. it is also claimed that the attorney failed to communicate with petitioner and keep him advised concerning the progress of the case and what his options were.
The robbery of the Safeway gasoline station occurred at about 9:00 pm, or shortly thereafter, on September 8, 1997. Petitioner testified that he was in his apartment, about 1 1/2 miles from the scene of the crime at the time of the robbery. He testified that he was with a young lady, Dee Ann Morton, from the afternoon of that day until the next morning. he also testified that he received a telephone call from his father at about 9:15 pm on that date.
Petitioner also testified that on the evening of September 8, 1997, while Morton was in the apartment, Christopher Watson and Edward Rosario, came to the apartment. They informed petitioner that the police were looking for them and that they wished to leave the proceeds of the robbery in the apartment. Petitioner stated that he refused to allow this and the two men then left.
Dee Ann Morton basically confirmed petitioner's testimony about being with him on the evening of September 8, 1997. She testified that she was in petitioner's apartment with him from 6:30 pm until 12:30 am or 1:00 am on September 9th, She did say that they left the apartment together from about 8:30 pm until 9:30 pm.
Petitioner's father, Michael E. Robichaud, testified that he heard about the robbery on his scanner and called petitioner at his apartment around 9:15 pm.
Petitioner's alibi defense is complicated by the fact that a few days after the robbery, the state police, having received information that petitioner may have been involved in the crime, called him in to discuss the matter. During this interview, petitioner told the police that Chris Watson and Eduardo Rosario, who were also suspects in the case, were with him in his apartment on the night the robbery took place and that they never left.[1]
In his testimony at the habeas trial, petitioner testified that his statement concerning Watson and Rosario being with him on the night of the robbery was false and that he made this statement to the police to create an alibi for these gentlemen.
It is petitioner's claim that he informed Attorney Hauslaib about CT Page 7611 Morton prior to trial and that the attorney never contacted her or investigated his claim that he was with her at the time of the robbery. Attorney Hauslaib testified that he does not recall petitioner informing him about Morton prior to the trial. It is highly unlikely that if Morton had been mentioned as a potential alibi witness the attorney would have forgotten it. Her testimony was in direct variance with what petitioner told the police and what Watson and Rosario were expected to testify at trial. Attorney Hauslaib testified that Morton's testimony came up only after petitioner's conviction. This is confirmed by Attorney Hauslaib's statement at the time of sentencing, July 10, 1998. To the effect that he had just been informed by the state's attorney on the previous day that the state was now in possession of a purported alibi witness who was with petitioner on the evening of the crime.[2]
The better evidence confirms Attorney Hauslaib's version of when Ms. Morton first became known as a potential witness. Certainly if she had been mentioned by petitioner as a potential witness prior to trial, the attorney at least would have remembered it. Petitioner's credibility is not good and Attorney Hauslaib's statement to the court on July 10, 1998 appears to be genuine and confirms his testimony that he first became aware of Ms. Morton after the trial.
The telephone call from petitioner's father was investigated by Attorney Hauslaib. He learned that petitioner's father would testify that he learned about the robbery from scanning the police channel. Upon hearing of the robbery, he telephoned to petitioner at his apartment shortly after the time the robbery took place. In his call, petitioner's father inquired, "which one of your asshole friends did the robbery." Attorney Hauslaib made the tactical decision that this testimony would not help defendant. The case was prepared for trial on the basis that petitioner was being charged with conspiracy and aiding and abetting the robbery. Under these circumstances, the decision not to call the father as a witness, was not unreasonable. Also, there was testimony at the trial that shortly after the robbery the parties went to petitioner's apartment. Under such circumstances, a jury reasonably could find that petitioner was present at the robbery and had time to return to his apartment to receive his father's telephone call.
With respect to other allegations of the petition, the better evidence indicates that Attorney Hauslaib had known petitioner for some time and first represented him in Juvenile Court. The attorney met with the petitioner on a number of occasions prior to trial to discuss the case. He advised petitioner about the situation of the co-defendants and attempted to explain what evidence the state would present at trial. Plea bargains were discussed and the state's offer was communicated to petitioner. Petitioner was also advised that if he was convicted after trial, the CT Page 7612 sentence imposed would probably be longer than could be obtained by plea bargaining. The election to go to trial was left to petitioner who refused the state's offer and elected to go to trial.
As previously noted, Attorney Hauslaib prepared for trial on the basis that petitioner was being charged with an inchoate offense and aiding and abetting in the commission of the robbery. Only one of the perpetrators, the one who displayed the weapon, was visible to the two victims at the time of the robbery. Watson had admitted that he was the one who held the weapon. Under these circumstances, petitioner could not be placed at the scene by the victims. All of the witnesses who would testify against him from their own knowledge of the robbery had criminal records or would benefit from their testimony.
The situation changed before the start of evidence when Watson altered his version of the facts and it was indicated that he would testify that petitioner was the person who held the gun and not him.
Attorney Hauslaib voiced strong objection to this change and informed the court that this significantly altered the theory on which the defense had prepared for the case. The attorney requested a week's delay so that he could investigate and prepare for trial because of the change. he was granted a one day continuance.
A review of the testimony at trial indicates that Attorney Hauslaib brought out the difficulty which the victims would have in identifying the robber who held the weapon. The attorney also attacked the credibility of Watson and the other witnesses called by the state. It is noted that petitioner was acquitted of the robbery charge and convicted only of the conspiracy and larceny charges.
A review of the evidence leads to the conclusion that it has not been proven that Attorney Hauslaib's performance of his duties in representing petitioner was defective. His conduct, prior to trial and during the trial, did not fall below the required standard of reasonable competence displayed by lawyers with ordinary training and skill in the trial of criminal cases.
The petition for habeas corpus based upon the claim of ineffective assistance of counsel as set forth in the first and second counts of the complaint has not been proven and must be dismissed.
 II
Count two of the petition alleges that petitioner did not bypass the appeal process. This has been proven, but by itself affords no relief. CT Page 7613
 III
The third count of the petition alleges that petitioner has been denied his right of sentence review.
Sentence review was available to petitioner under the provisions of C.G.S. § 51-195. To avail himself of this right, it was necessary that an application for review be filed within thirty days from the date of sentencing, July 10, 1998.
A review of the sentencing transcript reveals that after sentence was imposed, it was the understanding of the court that petitioner would receive the application for sentence review before leaving the court house. There is nothing to indicate that petitioner did in fact receive the application and no such application was filed within the period allowed by statute.
It was the responsibility of counsel of record, at the time of sentencing, to represent petitioner before sentence review. At the time sentence was imposed and thereafter, the petitioner and his attorney were concentrating on the appeal of the case. It does not appear that petitioner ever received the proper application for sentence review and he was denied his right to such review.
In the exercise of its authority to decide habeas corpus cases under the provisions of C.G.S. § 52-470, the court is required to grant such relief as law and justice require. Under the circumstances of this case, law and justice require that petitioner's right to apply for sentence review be reinstated.
 IV
Accordingly, counts one and two of the petitioner are dismissed. On count three, the issues having been resolved in favor of the petitioner, his right of sentence review is reinstated provided a proper application for sentence review is filed within thirty days of this judgment with the clerk of the court for the Judicial District of Windham together with the notice of application required by C.G.S. § 54-227 and a cop of this judgment.
_______________________________________ Joseph J. Purtill, Judge Trial Referee