[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1577
Petitioner was convicted after jury trial of arson in the first degree in violation of C.G.S. Sec. 53a-111 and53a-8, and sentenced to a term of imprisonment of 13 years. The relevant facts underlying the conviction are set forth in state v. Rodriquez, 200 Conn. 685 (1986) (the "direct appeal"), affirming the conviction on direct appeal. The arson concerned the firebombing of a grocery store owned and operated by Petitioner in leased premises.
Petitioner then brought a petition for writ of habeas corpus alleging ineffective assistance of counsel and violation of due process in that his trial counsel had not adequately informed him of his right to testify at trial. The habeas court granted the petition and ordered a new trial. In Commissioner of Correction v. Rodriquez, 222 Conn. 469
(1992) (the "remand ruling"), our Supreme Court upon writ of error reversed that judgment and remanded the case to this Court for a new hearing.
After first determining that the gravamen of Petitioner's claim is ineffectiveness of trial counsel in violation of his Sixth Amendment right, the remand ruling directs this Court to conduct an analysis of that ineffectiveness claim under the two-pronged standard of Strickland v. Washington, 466 U.S. 668 (1984). That standard requires a petitioner to establish both (1) deficient performance and (2) actual prejudice.
The first prong, "deficient performance," requires a petitioner to establish that trial counsel's performance was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law, Summerville v. Warden, 29 Conn. App. 162, 170
(1992); that counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment." Strickland v. Washington, supra, 687. A criminal defendant is "not entitled to error free representation, only representation falling within the range of competence demanded of attorneys in criminal cases." CT Page 1578 Commissioner of Correction v. Rodriquez, supra, 478.
The second prong, "actual prejudice," requires a petitioner to establish that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. In this context, the "reasonable probability" test does not require a showing that counsel's deficient conduct more likely than not altered the outcome in the case, but rather merely requires a petitioner to establish "a probability sufficient to undermine confidence in the outcome." Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46 (1992).
The remand ruling directs this court in its prejudice analysis to give consideration to (1) whether at the time of his trial, Petitioner actually knew he had the right to testify; (2) whether, knowing he had that option, he would have taken the stand in the face of counsel's advice not to do so; and (3) a weighing of Petitioner's credibility and the impact of his proposed testimony upon the jury, taking into account the evidence introduced against him and other factors commented upon in the remand ruling, Id., 479-80.
At the hearing before this Court, Petitioner offered as witnesses himself and, as an expert on the deficiency of performance issue, Todd D. Fernow, Director of the University of Connecticut Law School Criminal Clinic. Respondent offered the subject trial counsel, Attorney Earl Williams, and Attorney Mary Galvin, who prosecuted the underlying criminal case. In addition, the trial transcript and exhibits of the prior habeas trial and the underlying criminal case trial transcript were admitted by stipulation. The testimony concerned events of a decade ago, the arson having occurred in the early morning hours of March 21, 1982, and the criminal trial in June, 1983.
The ineffectiveness claim as alleged does not involve issues respecting the quality of trial counsel's representation, conduct of the trial, appreciation of the strength of the state's case, or advice. Rather, it is limited to the narrow issue of counsel's alleged failure adequately to advise Petitioner of his right to testify, and matters incident thereto. The Court notes that in his direct appeal, however, Petitioner did unsuccessfully assert ineffectiveness claims against trial counsel. These were in CT Page 1579 part based on counsel's alleged conflict of interest in permitting Petitioner's wife to comply with certain pre-trial discovery requests concerning business records of the subject store. See state v. Rodriquez, supra, 694-97.
The evidence upon which the jury could have reasonably relied in determining guilt is set forth at length in the direct appeal and in substance in the remand ruling. The sufficiency of that evidence was affirmed in the direct appeal and is not at issue here.
As best as can be deduced from Petitioner's testimony in this proceeding, the only potentially significant exculpatory evidence not otherwise before the jury to which he now says he would have testified concerns his identification of the smoking "Molotov cocktail" as a Coca-Cola bottle. Evidence at trial, including Petitioner's sworn written statement admitted at trial (Resp. Ex. 3), indicated that Petitioner claimed he made that identification from the distance of approximately 50 feet. As identification from that distance was implausible under the circumstances, the inference was that Petitioner must have had prior knowledge of the bottle identity, and thus was implicated in the arson.
Petitioner here stated that he actually made this identification from a distance of five or ten feet, and would have so testified at trial. However, he made no mention of this proposed testimony at the prior habeas trial, and admitted that he did not specifically bring it to the attention of trial counsel. see also, commissioner of Correction v. Rodriquez, supra, 480 n. 10. Otherwise, he would have maintained his innocence.
Petitioner indicated no testimony affecting other such damaging trial evidence as the existence of the gallon container of gasoline strategically located inside his store beneath the spot where the "Molotov cocktail" bottle would have hit had it fully penetrated the store window. This container could only have been placed there after store closing by someone possessing the keys. The only two persons possessing keys were the Petitioner and his employee, Lopez, who was not under suspicion. Presumably, Petitioner was in accord with his trial defense strategy implying that someone, such as his landlord with whom he was having difficulties, could have entered the store through a back door without CT Page 1580 setting off the burglar alarm. A further problem with that strategy was that the landlord and his Wife resided above the store and would have been in severe jeopardy had the bottle penetrated the window. The combination of gasoline in the container and bottle had a potential explosive power of 12 to 14 sticks of dynamite.
Professor Fernow opined that a jury tends to draw an adverse inference from the failure of a criminal defendant to testify. This may be even more the case where, as here, the evidence is largely circumstantial. Conceivably, therefor, the jury might have been affirmatively influenced by his taking the stand if Petitioner were a sympathetic and credible witness.
The Court has no way of viewing Petitioner's demeanor of a decade ago. It can only extrapolate based on his conduct at this hearing which, unfortunately, was not positive. His testimony tended to be inconsistent and unresponsive. While these deficiencies may in part have resulted from stress, they cannot be attributed to the fact that he was testifying through an interpreter. Petitioner seemed unable or unwillingly to give a direct or credible answer to seemingly significant and uncomplicated questions, including some posed by his own counsel.
For example, he could give no credible answer to the question, posed on two different hearing days, of when and how did he learn that he had the right to testify at his trial. He first stated that he learned this while at prison from reading books at the library. When asked what books, he said books on fires. He could not relate what books on fires had to do with a right to testify, or how he found the proper book. Later, he stated that he was assisted by a named fellow inmate, but then stated that he did not discuss this issue with that inmate. He never did credibly answer the question.
Petitioner was equally hazy on the circumstances under which trial counsel advised him not to testify. The best he could state was that they had only one discussion on the subject, that it probably occurred at court during the course of the prosecution's case at a stage which he could not recall, and that he could not recall how or why the discussion arose, or what was said or discussed. It was CT Page 1581 clear, however, that he did not tell trial counsel that he wished to testify.
Near the close of his testimony, Petitioner volunteered that he had retained trial counsel by mistake, thinking that he was retaining a different New Haven attorney also named Williams. This testimony was all the more surprising as trial counsel had at that time been representing Petitioner for a number of years, and Petitioner had on previous occasions met with him at that office.
The Court finds it unlikely that, had Petitioner taken the stand, cross examination on prior fires and insurance claims would have been admitted or attempted. However, trial counsel's stated concern about possible surprise by what might be elicited from Petitioner should he have taken the stand, and what permissible cross examination might thereby ensue, seems well founded.
The Court finds that Petitioner has failed to show that there is a reasonable probability that his testifying would have resulted in the jury having a reasonable doubt as to his guilt, or otherwise that his herein proffered testimony would have established "a probability sufficient to undermine confidence in the outcome." While this finding is dispositive, the Court, consistent with the remand mandate, will rule on the remaining issues. These issues, concerning "deficient performance" of trial counsel and "knowledge" of Petitioner, are intertwined.
Trial counsel's testimony was essentially the same as at the prior habeas proceeding. Again, he was testifying from memory to events of a decade ago without the benefit of his file. Apparently, at some point after the trial he had given his file to Petitioner's wife who indicated that they were then consulting with another attorney. He stated that he had numerous discussions with Petitioner prior to and during trial concerning the evidence against him, trial strategy and related matters, including the subject of Petitioner's testifying. Counsel had represented Petitioner for a number of years. This included Civil litigation affecting his properties, at which Petitioner had testified. There was a professional relationship. Although counsel candidly admitted that he could not recall specifically advising Petitioner that he had the right to testify if he so CT Page 1582 desired, it was his firm opinion, based on their discussions and upon his prior representation that Petitioner knew he had that right. Counsel is not required to follow a script.
The firm advice not to testify was apparently given during the course of the trial, as it would seem that counsel initially contemplated putting Petitioner on the stand. When advised that Attorney Galvin had here testified that Attorney Williams had mentioned Petitioner to the jury panels as a potential witness, he stated that he would not have done so unless he was then considering so using Petitioner. This Williams had mentioned Petitioner to the jury panels as a potential witness, he stated that he would not have done so unless he was then considering so using Petitioner. This lends further credence to counsel's opinion and recollection as to Petitioner's knowledge.
Petitioner had resided in the mainland United states since the early 1960's. In the succeeding years he had worked at various industrial jobs and began acquiring properties. By 1982 he had become the owner (ostensibly in his wife's name) and manager of at least two grocery businesses and numbers of income producing properties. He gave no impression of being inexperienced in related business and legal matters. He apparently felt comfortable in acquiring the subject grocery business without use of an attorney. He denied having testified in litigation with his tenants, stating he had not done so because these properties were in his wife's name.
While Petitioner's discussions with trial counsel were in English, Petitioner admitted that he understood counsel and had no difficulty in making his wishes known to counsel. Petitioner's dealings with others of his business and professional advisors were in English. He testified that his dealings with fifty percent of his grocery customers were in English. There was no language barrier.
Petitioner has not satisfied his burden of proof on the remaining issues. His statement that he was unaware of his right to testify is not credible. He would not — as he did not — have overruled counsel's advice. Under the circumstances here presented, counsel's conduct was not deficient. CT Page 1583
The petition is dismissed.
BY THE COURT, David L. Fineberg Judge, Superior Court