ARTHUR J. DAVIS *v.* WARDEN, STATE PRISON
(11789)

FOTI, LAVERY and HEIMAN, Js.

Argued June 8—decision released August 3, 1993

*William M. Bloss,* for the appellant (petitioner).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (respondent).

HEIMAN, J. The petitioner appeals from the judgment of the habeas court dismissing his petition for a writ of habeas corpus. On appeal, the petitioner asserts that the habeas court improperly found that he had received effective assistance of counsel (1) at the guilt-innocence phase of his trial in light of trial counsel's insufficient investigation of possible defenses and witnesses and (2) at his resentencing proceedings. We affirm the judgment of the habeas court.

The following brief history of the case is necessary to a resolution of this appeal.[1] On November 16, 1966, after a trial to a three judge panel, the court found the petitioner guilty as charged on each of six counts of the indictment that alleged murder in the first degree, and, on November 17, imposed the death sentence pursuant to General Statutes (Cum. Sup. 1965) § 53-10.[2] Our Supreme Court affirmed both the conviction and the validity of the death sentence on direct appeal. On

---

[1] The underlying facts of the petitioner's conviction are set forth in *State v. Davis,* 158 Conn. 341, 260 A.2d 587 (1969).

[2] General Statutes (Cum. Sup. 1965) § 53-10 provided in pertinent part: "Any person who commits murder in the first degree . . . shall suffer death . . . . If the person accused elects to be tried by the court and is found guilty . . . the court may, in its discretion, imprison such person in the State Prison for life. . . ."

petition for writ of certiorari, the United States Supreme Court vacated the sentence in light of *Furman* v. *Georgia,* 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), and ordered further proceedings. *Davis* v. *Connecticut,* 408 U.S. 935, 92 S. Ct. 2856, 33 L. Ed. 2d 750 (1972). On remand from the United States Supreme Court, our Supreme Court vacated the death sentence and ordered that the petitioner be resentenced accordingly. *State* v. *Davis,* 163 Conn. 642, 316 A.2d 512 (1972). On November 16, 1972, a different three judge panel of the Superior Court sentenced the petitioner to serve six consecutive life sentences.

On April 13, 1989, the petitioner brought an amended petition for a writ of habeas corpus. The habeas court heard testimony concerning the alleged failure of counsel to complete a reasonable pretrial investigation. The court made extensive factual findings concerning this claim. It rejected the petitioner's claim that he was not a good source of information for the presentation and preparation of his defense for reasons beyond his control. The court noted that the "record clearly demonstrates that the petitioner was examined prior to his underlying criminal trial by [three doctors] and they found that the petitioner was able to understand the nature of the proceedings against him and to cooperate in the preparation of a defense." Although the petitioner did not cooperate with defense counsel in the preparation of his defense, the court found he was capable of assisting counsel had he chosen to do so.

The habeas court made several additional findings. It found that the petitioner was represented at all times by the New Haven public defender, that the public defender had the use of a full time investigator and an assistant public defender both of whom assisted the public defender at the petitioner's trial, and that, immediately after the petitioner's arrest, the public defender commenced his representation of the petitioner. The

court found that the public defender sent the investigator to New Jersey to assist the petitioner prior to the time the New Haven police arrived there to question him.[3] The investigator obtained information regarding the petitioner's intoxication at the time of his arrest. The investigator also advised the petitioner not to make any incriminating statements while incarcerated. Upon his return to Connecticut, the petitioner met with the public defender. The public defender saw all of the state's forensic and ballistic evidence. He also viewed photographs of the crime scene and reviewed statements given by the state's witnesses. The public defender or the investigator interviewed witnesses suggested by the petitioner and his family. Their investigation included interviews with the petitioner's mother, brother, and the last person with the petitioner prior to the shooting. On the basis of these findings, the court concluded that defense counsel's investigation met the performance standards mandated by *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). It found that the petitioner had failed to make the required showing of either deficient performance or sufficient prejudice.

The habeas court also heard testimony that counsel failed to develop the record relating to alcohol use and its impact on the petitioner's sanity and ability to form the specific intent to commit the murders. The court found that the petitioner failed to prove "by a fair preponderance of the evidence his claim of [the existence of] long term abuse of alcohol or his claim of alcohol related blackouts."

The habeas court also heard testimony concerning the alleged failure of counsel to provide the petitioner with effective assistance of counsel at his resentencing in 1972. The habeas court made the following find-

---

[3] The petitioner was arrested in New Jersey after he left Connecticut.

ings: "After the United States Supreme Court vacated the death penalty, the procedure to be followed for those persons who have the death penalty imposed was rare and difficult for everyone to agree as to what would happen next. The Connecticut Supreme Court remanded the case to the trial court to be set down for resentencing. Resentencing was done before a different three judge panel. The petitioner has failed to prove whether the new three judge panel had been provided a transcript of the prior trial resulting in the petitioner's conviction prior to resentencing. No witnesses were presented by defense counsel at the resentencing hearing. No new evidence was presented to the sentencing panel as there was no new evidence available." On the basis of these findings, the habeas court found that the petitioner's counsel's performance was not deficient. The court stated that "the strategic choice of defense counsel to rely on oral argument was well within the range of professionally reasonable judgment." The court also concluded that, even if counsel's performance was deficient, the petitioner was not prejudiced. The court noted that "given the overwhelming aggravating factors, there is no reasonable possibility that the claimed omitted evidence would have changed the sentence."

The habeas court dismissed the petitioner's petition for writ of habeas corpus. This appeal ensued.[4]

I

The petitioner asserts that the habeas court improperly found that at trial he had received the effective assistance of counsel guaranteed to him by both the state and federal constitutions. He posits that counsel failed to complete a reasonable pretrial investigation and to develop the record relating to alcohol use and

---

[4] Additional facts will be set forth where they are relevant to each issue.

its impact on the petitioner's sanity and his ability to form the specific intent to commit the crime.

In a habeas appeal, we cannot and will not disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Siano* v. *Warden,* 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993); *Copas* v. *Warden, 30* Conn. App. 677, 682, 621 A.2d 1378, cert. denied, 226 Conn. 901, 625 A.2d 1374 (1993). We determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. *Siano* v. *Warden,* supra; *Copas* v. *Warden,* supra. We do not examine the record to see if the trier of fact could have reached a contrary conclusion. *Siano* v. *Warden,* supra; *Copas* v. *Warden,* supra.

"Although the underlying historical facts found by the habeas court may not be disturbed unless they were clearly erroneous, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . ." (Citation omitted; internal quotation marks omitted.) *Copas* v. *Warden,* supra. Whether the historical facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is subject to plenary review by this court, unfettered by the clearly erroneous standard. *Siano* v. *Warden,* supra, 96; *Copas* v. *Warden,* supra, 683.

The right to counsel is the right to the effective assistance of counsel. *Strickland* v. *Washington,* supra; *Commissioner of Correction* v. *Rodriquez,* 222 Conn. 469, 478, 610 A.2d 631 (1992); *Siano* v. *Warden,* supra, 97; *Copas* v. *Warden,* supra, 681. This right is firmly

grounded in the mandates of the sixth amendment to the United States constitution, the fourteenth amendment to the United States constitution, and article first, § 8, of the Connecticut constitution. *Siano* v. *Warden,* supra, 96. "The right to counsel, however, is the right to effective assistance and not the right to perfect representation." Id., 97; *Commissioner of Correction* v. *Rodriquez,* supra.

Our Supreme Court has adopted the two-pronged analysis of *Strickland* v. *Washington,* supra, to determine if counsel's assistance was ineffective. *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 455, 610 A.2d 598 (1992); *Sekou* v. *Warden,* 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. *Bunkley* v. *Commissioner of Correction,* supra; *Hull* v. *Warden,* 32 Conn. App. 170, 174, 628 A.2d 32 (1993); *Siano* v. *Warden,* supra.

"To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citations omitted; internal quotation marks omitted.) *Siano* v. *Warden,* supra; *Hull* v. *Warden,* supra; *Copas* v. *Warden,* supra, 683–84.

"To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Siano* v. *Warden,* supra, 98; *Bunkley* v. *Commissioner of Correction,* supra, 454–55.

The petitioner's expert witness testified that a reasonably competent attorney in 1966 would have investigated the petitioner's excessive use of alcohol. He testified that certain obvious witnesses were not interviewed. He also testified that an adequate investigation would have included an investigation in the streets and community. In the expert's opinion, trial counsel's performance was deficient. He also opined that had trial counsel conducted an adequate investigation, a reasonable possibility existed that the result of the trial would have been different.

The respondent offered his own expert testimony that the only defense available to the petitioner was the one argued by trial counsel. The respondent's expert testified that he believed that the only theory available to the defense was that the 1966 murder was an aberration committed by an ordinary citizen. He stated that defense counsel could not be faulted for not investigating the theory of alcohol blackout. The respondent's expert testified that trial counsel's representation did not fall below the standard of practice. The expert also testified that even if trial counsel did

not adequately investigate the possibility of alcohol blackout, there was no reasonable possibility that the result of trial would have been different.

The habeas court heard testimony that trial counsel and the investigator spoke with the petitioner, his mother, his brother, and the last person known to have been with the petitioner prior to the murders.

The habeas court chose to credit the testimony of the respondent's expert concerning the standard of practice in the profession for conducting pretrial investigations. Further, the trial court also credited the testimony of the witnesses who testified as to the efforts made by defense counsel and his staff in conducting the pretrial investigation.

Our review of the whole record leads us to conclude that the petitioner has failed to demonstrate that the habeas court's factual findings are clearly erroneous. "The habeas court, as the fact finder, determines the credibility of the witnesses and the effect to be given to the testimony before it." *Siano* v. *Warden,* supra, 104. A review of the entire record reveals that the habeas court's factual findings are not clearly erroneous.

We also conclude that the habeas court, on the basis of its findings, could have reasonably found that the petitioner was afforded his constitutionally mandated right to the effective assistance of counsel. The record discloses that counsel, upon being advised of the arrest of the petitioner in New Jersey, promptly sent the investigator to consult with the petitioner. The record further discloses that a proper investigation was conducted into the murders and the circumstances surrounding them, and a theory of defense was formulated based on these facts. Defense counsel made certain strategic or tactical decisions in the prosecution of the defense that were reasonable and logical under the cir-

cumstances of this case. The factual history was replete with evidence of threats made by the petitioner against his common-law wife and her family. The evidence was sufficient to support inferences necessary to establish premeditation under General Statutes (Cum. Sup. 1965) § 53-9,[5] and counsel attempted to establish as a fact those factors that would negate the element of premeditation. The historical facts demonstrated a course of conduct by the petitioner that "indicated increasing anger, resentment and animosity towards the members of [his common-law wife's] family because they refused to inform him of her whereabouts and because he believed they were deceiving him." *State* v. *Davis,* 158 Conn. 341, 350–51, 260 A.2d 587 (1969). The habeas court could credit the testimony of the respondent's expert and find that trial counsel, faced with this overwhelming evidence of heinous acts of murder, raised the only possible defenses that were plausible.

Trial counsel's decisions in the guilt phase of the trial and the investigation that was conducted in support thereof was an exercise of reasonable professional judgment made with a thorough understanding of the state's claims and the physical evidence that supported the state's theories. We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Siano* v. *Warden,* supra, 97. "Counsel's decision therefore fell within the amorphous zone known as trial strategy or judgment calls . . . which will not be second guessed by this court." (Citation omitted; internal quotation marks omitted.) *Summerville* v. *Warden,* 29 Conn. App. 162, 176, 614 A.2d 842, cert. granted on other grounds, 224 Conn. 918, 617 A.2d 172 (1992).

---

[5] General Statutes (Cum. Sup. 1965) § 53-9 provided in pertinent part: "All murder perpetrated by means of . . . wilful, deliberate and premeditated killing . . . shall be murder in the first degree . . . ."

The trial court correctly determined that the performance of defense counsel in the guilt phase of the trial afforded the petitioner the effective assistance of counsel.

## II

The petitioner also asserts that the habeas court improperly found that he received the effective assistance of counsel at his resentencing in 1972.

We have previously discussed the petitioner's right to effective assistance of counsel. "A defendant has the right to counsel at every critical stage, including sentencing." *Copas* v. *Warden,* supra, 682. Our standard of review and analysis of the petitioner's claim for ineffective assistance of counsel at his resentencing is the same as that applicable to our review and analysis of his previous claim.

The habeas court heard the petitioner's expert testify that the reasonable practice of a criminal lawyer in New Haven with minimal competence at a sentencing hearing in 1972 such as the petitioner's would have been to present "quite a bit of evidence . . . [making] this sentencing hearing a major production." He testified that the role of an attorney at a sentencing hearing in 1972 was to present to the sentencing court as much evidence as possible to support the most lenient possible sentence for the client that is realistic under the circumstances. He could conceive of no tactical reason to rely solely on oral argument and not to introduce witnesses. He testified that mitigating evidence was available to trial counsel. In his view, a skillful pitch was not enough to overcome the presumption that the sentencing court would impose the maximum possible sentence.

Trial counsel testified that the procedure for resentencing was rare and that it was difficult for anyone

to agree as to what should occur at the hearing. The respondent's expert stated that he believed that at the sentencing hearing in 1972, trial counsel might have attempted to present further evidence. The respondent's expert testified, however, that in his opinion, in light of all of the evidence and especially the brutality of the crimes, the result would have been no different if additional evidence had been presented.

We need not resolve the issue of actions of counsel that implicate the resentencing procedure because we may, in an appropriate case, dispose of a claim of ineffective assistance on the basis of lack of prejudice without first resorting to an analysis of counsel's action. *Mercer* v. *Commissioner of Correction,* 31 Conn. 771, 775, 626 A.2d 831 (1993); see also *Strickland* v. *Washington,* supra, 687, *United States ex rel. Smith* v. *Lane,* 794 F.2d 287, 290 (7th Cir. 1986).

Thus, even if trial counsel's performance was deficient, the habeas court could have credited the respondent's expert who testified that had counsel presented additional evidence at the 1972 sentencing hearing, the resulting sentence would have not changed.[6]

As we have previously indicated, deficient performance by counsel as well as actual prejudice must coexist. *Bunkley* v. *Commissioner of Correction,* supra, 455. To satisfy the second prong, that his counsel's performance was so deficient that it prejudiced his defense, the

---

[6] The respondent's expert testified that "[w]e are dealing with a different animal when we are dealing with a death penalty case . . . . When [the case] came back [in 1972] [the petitioner] had escaped the death penalty and there were three other judges of the same time frame, range and age approximately. I think they felt, well, at least if this man is not going to suffer the death penalty . . . then at least [they] would put him away for the rest of his life. So I don't think, in my opinion, it would not have changed the result in any fashion. . . . In 1972 it is my opinion that he would have gotten six consecutive sentences anyway."

petitioner was obligated to establish that the performance was so grossly deficient as to deprive the petitioner of a fair trial, that is, a trial the result of which is reliable. Id. The test simply stated is that the petitioner must "demonstrate that 'there exists a reasonable probability that, but for counsel's unprofessional errors, the [the new sentence] would have been different.' " *Siano* v. *Warden,* supra, 98.

We are also cognizant of the fact that until the death penalty statute was adopted by Public Acts 1973, No. 73-137, no procedure existed for a determination of the propriety of the imposition of variant sentences in murder cases. It was only after the proceedings in this case had been completed that a statutory scheme for the production of evidence of aggravating and mitigating circumstances was introduced to our jurisprudence. See General Statutes § 53a-46a. The procedure to be followed where a death sentence was vacated following *Furman* v. *Georgia,* supra, was created on an ad hoc basis. The habeas court was entitled to credit, as it did, the testimony of the respondent's expert that, under the facts and circumstances of the case, any evidence produced by the petitioner would have been unavailing.

Here, the habeas court had before it evidence of the horrendous brutality of the six murders. It had before it the fact that prior to the murders the petitioner had expressed animosity toward the victims, including statements that if he had to shoot someone, he was going to take the whole lot with him, and his statement on the night of the murders that he was going to hurt someone that evening. The habeas court also had before it the fact that while three of the victims had been shot only once, the other three victims each had been shot twice. The evidence further disclosed that the petitioner fled the state after the murders. Thus, as did the trial court, the habeas court had before it sufficient evidence to find that the six murders were an atrocity and car-

ried out after the petitioner had formulated a wilful, deliberate and premeditated intent to kill several persons.

The evidence also revealed that the same counsel, whose performance in the habeas proceeding is now attacked, was also counsel who successfully prosecuted the petitioner's appeal to the United States Supreme Court and was responsible for the vacating of the death sentence previously imposed on the petitioner. *Davis* v. *Connecticut,* supra.

We conclude that the habeas court on the basis of all the evidence from the conviction and the other factors presented to it, applied the correct standard in its determination and that the evidence supports the trial court's finding that the petitioner failed to establish prejudice even assuming that he had succeeded in establishing a deficient performance by counsel in the penalty phase.

The judgment is affirmed.

In this opinion the other judges concurred.