[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner Wallie Poe brings this petition for a Writ of Habeas Corpus alleging that he was denied the effective assistance of counsel at trial in violation of the Sixth andFourteenth
Amendments to the United States Constitution and Article I, Section8 of the Connecticut Constitution. The Petitioner was charged with one count of Arson in the First Degree in violation of Connecticut General Statute § 53a-111(a)(1) and one count of Arson in the First Degree in violation of Connecticut General Statute § 53a-111(a)(4). After a jury trial the Petitioner was convicted of both crimes on November 2, 1992. On April 16, 1993 the Petitioner was sentenced CT Page 1404-G on the first count to a fifteen year period of incarceration execution to be suspended after he served twelve years, with five years probation. On the second count he received a twelve year sentence of incarceration to be concurrent with the previously mentioned sentence. Attached to the Petitioner's probation were several special conditions.
The underlying crimes took place at 299 Columbus Avenue in New Haven. The Petitioner and his then wife owned this property and the Petitioner was convicted of Arson in the First Degree in two counts for starting a fire at that location.
The Petitioner claims he was denied effective assistance of counsel in that his trial counsel: CT Page 1405
a. failed to adequately explain and advise Petitioner as to the potential merits of accepting a plea offer, the potential consequences of conviction and was unrealistic in his optimistic assessment of the likelihood of acquittal;
b. failed to adequately investigate physical evidence of ash in Petitioner's car ashtray and of tobacco flakes in the pocket of Petitioner's clothing which was seized by police; which evidence would have provided substantial corroboration to Petitioner's testimony;
c. failed to adequately investigate and offer medical evidence as to the effects of Petitioner's health and psychiatric condition;
d. failed to adequately cross-examine State witnesses and to present available defense evidence that Petitioner was in the equivalent of "custody" and underwent police interrogation at the scene of the fire such that his statements were subject to suppression;
e. failed to subpoena and/or present defense testimony from favorable witnesses;
f. failed to seek preservation of the basement rug for use by defense arson expert Mr. Kennedy; and
g. failed to present favorable expert testimony from arson expert Mr. Kennedy or to seek a court finding that Petitioner was indigent at the time of trial and an order to obtain State funding for the trial testimony of defense arson expert Mr. Kennedy.
The Petitioner further alleges that said omissions by his trial counsel fell below the range of competence displayed by lawyers with ordinary training and skill in the criminal law; and there is a reasonable probability that, but for trial counsel's acts and omissions, as aforesaid, the outcome of the proceedings would have been different.
The Petitioner claims that in late 1991 or early 1992 his attorney, John Williams, called him in Virginia and stated the States Attorney offered a sentence of six months in jail in return for a guilty plea. The Petitioner stated Attorney Williams advised him not to take the six month offer and that he would do the trial CT Page 1406 himself. The Petitioner also claimed that Attorney Williams never explained to him the maximum amount of jail time that he could receive if he was convicted of both counts of Arson. He testified if he knew how the system worked he would have accepted the offer of six months jail time and got on with his life. Attorney John Williams testified that he did not remember any specific plea offers in the case but that his notes reflect an offer of a sentence of ten years execution suspended after three years. He stated he did not remember any offer of six months in return for a guilty plea by the Petitioner. He said if he had received such an offer he would not have advised against accepting it because the Petitioner had a difficult case. Attorney Williams also testified that he was sure he discussed the maximum sentence that could be received in the matter with the Petitioner.
The Petitioner also claims that his counsel failed to investigate if there was cigarette ashes in his car or tobacco flakes in the pocket of the clothing he was wearing on the day he was arrested. The Petitioner claimed that if he started the fire it was accidental and could have started when he was supervising repairs to the furnace in the house while in the cellar. He stated he lit a cigarette with a match and threw the match down and because he has a hand or wrist condition known as "carpel tunnel" the match may not have landed in the direction in which he intended to throw it. The Petitioner testified that at trial the state claimed he did not smoke and that the fire was not caused by a cigarette or match. It should be noted here that on the day of the fire the Petitioner was supervising court ordered repairs to said home in the basement and on the second and third floors. The Petitioner stated he had a new automobile with only 7000 miles on it and that he could not smoke in his house. He claimed there were cigarette ashes in said car's ashtray from cigarettes which he had smoked. He claimed the State's forensic expert testified that his sweat shirt was dry. Mr. Poe stated that because of this at the time of trial there would still have been tobacco flakes in the shirt. He testified he told Attorney Williams about the cigarette ashes in the car ashtray and the tobacco flakes in the sweat shirt pocket both before and after the trial. He stated Attorney Williams told him he forgot to check the car ashtray for ashes and that he only checked the sweat shirt pocket to see if there was a pack of cigarettes there. Attorney Williams testified that he remembered the Petitioner asking him to look for ashes but he did not remember if the Petitioner asked him to examine the ashtray. Also he remembered the Petitioner wanting his shirt and pants examined for tobacco flakes because that would have proved he CT Page 1407 smoked which the state denied. Attorney Williams testified that during the trial he examined the interior of the pockets of the clothes the police seized from the Petitioner but he did not remember what if anything he found. He does not think he found any tobacco because that would have helped prove the fire was accidental.
The Petitioner testified that he had an intolerance to glucose and that as a result his blood sugar gets too low and he gets dizzy. He also testified that he has high blood pressure and has had deep seated psychological problems since the 1970's. He stated his parents came from Russia and that his mother always threatened to call the police on him when he was a boy and now he has a fear of the police. He stated on the day of the fire he was in shock because he lost $100,000.00 in the fire and he blamed himself for being so stupid as to cause the fire. He claims Attorney Williams only got his mental and health records from The Connecticut Health Care Plan (CHCP) and did not get any of his other mental and health records. He claimed Attorney Williams said it was a matter of funds. The Petitioner testified that if the jury had all his medical records it would have explained to them why he reacted as he did to the police questioning of him at the scene of the fire and how he testified at trial. He said there were inconsistencies between his statements at the scene and his testimony at trial. The Petitioner stated his long term memory is fine but his short term memory is not good. Attorney Williams testified that he discussed the Petitioner's medical condition with him but that he did not remember discussing any psychiatric records with the Petitioner. Attorney Williams also stated that the Petitioner's diet was related to the inconsistent statement he made to the police and that Mr. Poe testified about it at trial. Attorney Williams stated that he did not call an expert witness to testify about the Petitioner's diet at trial. Attorney Williams also stated that he remembers that The Connecticut Health Care Plan records were not helpful to the Petitioner's defense.
The petitioner also testified that at the scene of the fire he was placed in an investigator's car, then a marked police car and then the police arson van. He stated he and his wife were all questioned in these vehicles. At the suppression hearing concerning his case he alleges Attorney Williams did not properly cross-examine state witnesses and present available defense evidence that he was in "custody" at that time and therefore any statements which he made should have been suppressed but were not. The Petitioner claims that the state put on a witness that said he CT Page 1408 was never in a marked police car at the scene of the fire. He claims a tape owned by Channel 8 television would show that he was in a marked police car at the scene. He testified this tape was shown on the 6 p.m. and 11 p.m. newscasts on the day of the fire. He stated he told Attorney Williams about this film and Attorney Williams stated that such film are destroyed after two years. The Petitioner then stated he gave his Attorney the name of a person who saw the television newscasts and could testify about them but that Attorney Williams did not contact this witness. This film of the television newscasts was entered in evidence as Exhibit B. The court viewed this exhibit at least three times during the trial and the court could not determine if the car in the video was a marked police car. The Petitioner also called Officer Daniel Hott a 28 year New Haven Police Officer and he could not say if the car in said video (Exhibit B) was a New Haven Police Car. The Petitioner also called Joseph Toscano who in 1989 was an investigator for the State's Attorney's Office for the Arson Control Squad. He testified that he was one of the persons in the vehicle shown in Exhibit B but that he could not say who the other person was in said vehicle. The Petitioner had previously testified it was him. Mr. Toscano testified that on the date of the fire he was at the scene in a vehicle with the Petitioner but that the vehicle was not a "marked" police car. Attorney Williams testified that he did not remember anything about a Channel 8 video or if he said he could not subpena it. He said he has used Channel 8 videos in the past and was aware of how to obtain them.
The Petitioner claimed Attorney Williams did not cross-examine Jack Hubbel a forensic expert who testified for the State that there was kerosene on the Petitioner's sweat shirt and sweat pants. The Petitioner stated the scent dog did not pick up the scent of said kerosene. He also testified that Mr. Hubbel stated the sweat shirt was dry and the sweat pants were wet from rain water. The Petitioner said he wore these clothes after the fire when he went to East Haven and then to a restaurant. The police subsequently took possession of them. He said at the trial these clothes reeked of gasoline. The Petitioner claims someone in the States Attorney office soaked these clothes with gasoline. He stated he told Attorney Williams about these clothes and he did nothing about them. Attorney Williams testified that it would not surprise him if Mr. Hubbell testified that he found gasoline and kerosene on the Petitioner's clothes because the Petitioner stated he used gasoline to clean the furnace.
The Petitioner also claims that Attorney Williams did not CT Page 1409 cross-examine his wife who was a hostile witness because he claims she previously tried to kill him and that charge was later reduced and she was given the Accelerated Rehabilitation Program to said reduced offense. Attorney Williams stated that the Petitioner's wife's testimony did hurt him.
The Petitioner stated that Attorney Williams did not call three individuals who worked on the subject house on the date of the fire and who would have testified that the Petitioner did not cause the fire intentionally. Attorney Williams stated he and the investigator made a considerable effort to track down these three individuals but he cannot remember if they found them.
The Petitioner said Attorney Williams failed to call Meyer Biller as a witness. He said Mr. Biller would have testified that the fire was accidental and that he had examined over $75,000.00 of invoices for improvements that the Petitioner made to the subject house. Attorney Williams stated he did not remember the Petitioner stating that Meyer Biller would say the fire was accidental but that he would have been afraid to use Mr. Biller as a witness because he himself had been convicted of arson.
Also the Petitioner claims Attorney Williams did not call his secretary who would testify that he smoked. Attorney Williams stated he does not remember her or why he did not call her as witness.
Also the Petitioner claims Attorney Williams should have called Jose Gomes who lived on the third floor of the subject house with a Mrs. Nieves. The Petitioner stated Mr. Gomes had stated that he (Gomes) was going to burn the building down. Attorney Williams testified he did not remember Jose Gomes. He does remember trying to subpoena a boyfriend of someone.
Attorney Williams retained a fire expert from Chicago named Kennedy for the Petitioner's case. He was paid $10,000.00 for his investigation. The Petitioner stated Mr. Kennedy would have testified that the fire was definitely not arson and that a rug where the fire occurred had been saturated with paint compounds, and gas over a period of years. He said Mr. Kennedy was not called as witness because Attorney Williams wanted $3000.00 to fly him in for the trial and the Petitioner did not have it. Attorney Williams testified he did not call Mr. Kennedy as a witness because he and the State's expert agreed on the cause of the fire. Attorney Williams said the issue was whether it was an intentional CT Page 1410 or accidental fire. On this point Mr. Kennedy could not say if the fire was started accidentally or intentionally according to Attorney Williams. Attorney Williams testified he discussed the money needed to bring Mr. Kennedy to New Haven for the trial with the Petitioner. He was also aware of the program whereby he could have applied to the Office of the Public Defender for funds to bring Mr. Kennedy to New Haven if the Petitioner was indigent. He said he did not use this program because the Petitioner never said he was indigent and further he did not need the testimony of Mr. Kennedy in the Petitioner's defense.
The Petitioner stated he informed Attorney Williams that a rug which was near the fire was very important and should be preserved because it would show why the fire spread and that it was an accidental fire and not in intentional fire. He stated Attorney William's investigator was suppose to secure this rug and he did not do so. He stated Mr. Kennedy told Attorney Williams the rug was important and it should be preserved so it could be tested. Attorney Williams stated he did not recall Mr. Kennedy saying that the rug should be kept intact. However, Attorney Williams remembered speaking to his investigator about preserving the rug and he (Attorney Williams) was told it was preserved and then later found that it was not preserved. Attorney Neil Cone who worked in Attorney William's office from February 1989 to January 1990 testified that he met Mr. Kennedy at Bradley International Airport and took him to the subject house. He stated the petitioner, Attorney William's investigator, he, Mr. Kennedy and two of the Petitioner's employees went through the subject house structure for about one hour. He stated Mr. Kennedy had a video camera and tape recorder with him at that time. Attorney Cone also stated that Mr. Kennedy conveyed his opinion as to the cause of the fire to Attorney Williams.
"Our Supreme Court has adopted the two-pronged analysis of Strickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner of Correction,222 Conn. 444, 455, 610 A.2d 598 (1992). Sekou v. Warden,216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v. Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170, 174,628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance CT Page 1411 was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . we will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v. Warden, supra; Hull v. Warden, supra; Copas v. Warden, supra, 683-84.
"`To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citations omitted; internal quotation marks omitted). Siano v. Warden, supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55." Davis v. Warden, 32 Conn. App. 296, 301-303, 629 A.2d 440, cert. denied,227 Conn. 924, 632 A.2d 701 (1993). Johnson v. Commissioner ofCorrection, 36 Conn. App. 695, 701, 702 (1995).
After hearing the evidence this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated April 22, 1994. He has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge CT Page 1412