[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner, Christopher R. Taft, brings this petition for a Writ of Habeas Corpus by an Amended Petition dated January 9, 1996 alleging that his counsel was ineffective in representing him in a criminal matter. The Petitioner alleges that his trial counsel, Attorney Patricia Buck Wolf, was ineffective in that she failed to use an investigation report of a private investigator, James Byrd, which he claims included exculpatory material, and further she failed to seek a Secondino Charge on the State's failure to call one Robin Standish, a/k/a Robin Stanford (Stanford), as a witness in the trial. The Petitioner also alleges that Attorney Patricia Buck Wolf was ineffective when she failed to object to questioning of Officer Brian Donnelly of the New Haven Police Department when he was testifying about the CT Page 2871 weapon the Petitioner used in the subject crimes.
On February 14, 1990, the Petitioner was convicted of Attempted Assault in the First Degree in violation of Conn. Gen. Statutes §§ 53a-59(a)(1) and 53a-49, and Carrying a Pistol Without a Permit in violation of § 29-35. On March 30, 1990, the Petitioner received a total effective sentence of seventeen years incarceration for those crimes. This sentence was to be served concurrently with the sentence he was then serving. The Petitioner appealed his conviction and the Connecticut Appellate Court upheld the convictions in 25 Conn. App. 578 (1991).
On June 10, 1987, the Petitioner and Robin Stanford had been living together for about 3 weeks at 36 Tilton Street in New Haven. During the early morning hours of that date Sylvester Gardner, a former acquaintance of Ms. Stanford, came to 36 Tilton Street and picked up Ms. Stanford. The Petitioner became upset and when Ms. Stanford and Mr. Gardner returned an hour later, the Petitioner fired three shots at Mr. Gardner at one time and then fired a fourth shot at him a little later.
Prior to his trial the Petitioner was represented by Attorney Karen Goodrow who had retained James Byrd to do an investigation of this incident. In the course of this investigation Mr. Byrd obtained a statement from Ms. Stanford which said the Petitioner pointed the gun in the air when he fired it. This statement was different from what Ms. Stanford had told Officer Brian Donnelly concerning the shots fired by the Petitioner. Attorney Goodrow testified that the Petitioner's defense was that he had no intent to do harm to anyone and that he just wanted to scare or startle Mr. Gardner. At one point while Attorney Goodrow was representing the Petitioner, he had plead guilty to certain offenses but subsequently he withdrew said guilty pleas.
Prior to trial the Petitioner privately retained Attorney Patricia Buck Wolf to represent him in this matter. At trial said attorney was the Petitioner's private counsel as opposed to representing him as a Special Public Defender in the appeal of his convictions and at sentence review thereafter.
Attorney Patricia Buck Wolf testified at this hearing that she returned the Petitioner's file to the New Haven Public Defender's Office two times, namely after representing him on the appeal and after the sentence review hearing. She testified she got no receipt for the file. She testified she did not keep a CT Page 2872 photocopy of the file for her records and did not know of any reason why she should have retained a photocopy of the file. Attorney Patricia Buck Wolf testified she represented the Petitioner on several files and that she did not recall this incident or this trial. She testified she did not remember what she did to prepare for the Petitioner's trial of if she subpoenaed any witnesses for the trial. She also testified that she did not remember what the case was about or what charges the Petitioner faced. She also stated that at the time of trial she did not know who Robin Stanford was and did not recall if the State called Ms. Stanford as a witness. Ms. Stanford was one of the complainants against the Petitioner according to the police report (Exhibit 2). The court found it unusual that Attorney Patricia Buck Wolf had so little recollection of a trial that took place only six years ago and where her client received a seventeen year sentence.
Linda Ruggiero, a paralegal in the Chief Public Defender's Office in New Haven, testified that that office had no record that Attorney Patricia Buck Wolf dropped off her file on the Petitioner to their office. Ms. Ruggiero testified that the Chief Public Defender's file on the Petitioner shows that Attorney Patricia Buck Wolf handled the Petitioner's appeal but does not show she represented him at his sentence review hearing.
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992); Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170,174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an object standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the CT Page 2873 presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v. Warden, supra; Hullv. Warden, supra; Copas v. Warden, supra, 683-84."
"To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (Citations omitted; internal quotation marks omitted.) Siano v.Warden, supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55." Davis v. Warden, 32 Conn. App. 296, 301-303,629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993); Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701, 702 (1995).
During the hearing of the Petition, the Petitioner could not locate Robin Stanford and therefore she did not testify. The Petitioner claims his attorney was ineffective because she did not call her as a witness during his trial The Petitioner claims that Ms. Stanford's statements to Mr. Byrd were helpful to his case. Attorney Goodrow testified that in the investigative report of James Byrd it stated that the Petitioner discharged the weapon in the air and not while it was pointed at someone. The court does not find merit to this claim. Even if the court were to find that that trial counsel's performance was deficient, there is no evidence on which this court could find that counsel's deficient representation caused actual prejudice to the Petitioner.
One of the complainants against the Petitioner was Robin Stanford. She was not called as a witness at the Petitioner's trial by either the State or the Petitioner. The Petitioner would have the court believe that Ms. Stanford's testimony would have been favorable to him. The Petitioner alleges that his attorney was ineffective because she did not seek a Secondino Charge relative to Ms. Stanford. Under that rule of law the failure of a party to produce a witness who it is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable CT Page 2874 to the party s cause. Secondino v. New Haven Gas Co., 147 Conn. 672,675 (1960). The party against whose cause an unfavorable inference is claimed may, of course, offer evidence to explain the failure to produce the witness. Id. There are two requirements for the operation of the rule: The witness must be available and he must be a witness whom the party would naturally produce. Id. In this matter there was no evidence that Ms. Stanford was available. In fact, during this habeas hearing the Petitioner wanted to call her as a witness but could not locate her. Further, in view of the police report (Exhibit 2), this court is not convinced that Ms. Stanford's testimony would have been favorable to the Petitioner at his trial. In fact, the Petitioner testified that Attorney Patricia Buck Wolf advised him that Ms. Stanford would hurt his case more than help it if she were called as a witness. Therefore, the court also finds that this allegation relative to the failure of the Petitioner's trial attorney to seek a Secondino Charge is also without merit.
The Petitioner next alleges that the State did not lay a proper foundation for the testimony of Officer Brian Donnelly relative to the weapon used in these crimes. The pertinent testimony is set forth below.
 Q And can you describe Mr. Gardner's demeanor at the time that you spoke with him?
A Very excited, upset and nervous.
 Q And can you describe Miss Stanford's demeanor at the time you spoke to her?
A Much the same, excited, upset and nervous.
 Q And did you also have occasion to speak I guess to a, you said her name was Bernice Carroll?
A Yes.
Q And also Mr. Brown?
A Yes.
Q And where did they live by the way?
A They lived at 36 Tilton Street on the second floor. CT Page 2875
 Q And did you have occasion, after speaking with these individuals to look for something?
A Yes I did.
Q What were you looking for?
 A A 38 caliber snub nose revolver, black in color with a brown wood handle.
 Q And did you begin to look for that 38 caliber weapon?
A Yes I did.
Q Where did you look?
 A We looked in the general area, pretty much surrounding the whole house and up and down the streets.
The court agrees that if the Petitioner's attorney had objected to this line of questioning, such objection might have been sustained unless a proper foundation was put forth on the record for such questioning. However, Sylvester Gardner testified relative to the weapon the Petitioner used when he fired four shots at him. He described it as black firearm with a barrel of less than twelve inches. If the aforementioned colloquy were stricken from the record there is still sufficient evidence upon which the jury could have made a finding of guilty for the two crimes for which the defendant was convicted. Even if the court found the Petitioner's attorney's representation of him was deficient, he still did not prove the second prong of theStrickland v. Washington test, namely actual prejudice. The Petitioner has not put forth any evidence which would allow this court to find that if the aforementioned colloquy had not been allowed into evidence, it is reasonably probable that the result of the trial would have been different. In fact it is the court's opinion after reviewing this matter that the Petitioner would have still been found guilty of the crimes he was convicted of even if the aforementioned colloquy have never been heard by the trier.
After hearing the evidence, this Court finds that the Petitioner has failed to sustain his burden of proof as set forth CT Page 2876 in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated January 9, 1996, for the reasons set forth above.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge