[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On September 27, 1996 the Petitioner John Laccone III filed an amended petition seeking a writ of habeas corpus. On the same date the Respondent filed an amended Return. The amended petition is in five counts. Prior to the commencement of this hearing the Petitioner orally withdrew counts two and three. The first count alleges that the Petitioner's trial attorney was ineffective because he knew of and did not offer into evidence a video tape that would have aided Mr. Laccone's defense. The fourth count alleges juror misconduct and the fifth count alleges the trial judge was negligent in not investigating and holding a hearing relative to alleged juror misconduct by one Pedro Matos. The Petitioner was arrested on December 26, 1991 on the charges of Assault in the First Degree in violation of Connecticut General Statute § 53a-59-(a)(3) and Risk of Injury to a Minor in violation of Connecticut General Statute § 53-21. The Petitioner was found guilty of both charges after a jury trial. CT Page 7811 On March 19, 1993 the petitioner received a total effective sentence of thirteen years incarceration execution suspended after serving eight with five years probation.
Jennifer Hart testified that the Petitioner's sister Tammy Chaisse and her husband Douglas Chaisse lived on the second floor at 36 Rose Street, Waterbury, Connecticut at the time of the trial. She stated that on the day the trial ended she saw Pedro Matos a juror in the Petitioner's trial at said address. She stated she never saw Mr. Matos at said address before the trial ended but thereafter saw him there day after day. Ms. Hart testified that relatives of the said Pedro Matos lived on the first floor of 36 Rose Street but that she did not know their names. Ms. Hart never saw the juror, Pedro Matos, at 36 Rose Street until the Petitioner's trial had concluded.
The Petitioner testified that he did not know the juror Pedro Matos personally but that he learned about him from his brother-in-law Doug Chaisse. The Petitioner stated Mr. Chaisse told him that said juror Pedro Matos worked on his (Chaisse's) house two weeks before. When the Court asked the Petitioner "two weeks before what" the Petitioner could not say because he (Petitioner) stated his mind went blank. The Petitioner testified that he told his trial attorney, Mark Kostecki, that Doug Chaisse had information on the juror Pedro Matos. The Petitioner testified he told Attorney Kostecki that Pedro Matos lied when he stated during voir dire that he (Matos) did not know any of the witnesses in the Petitioner's case. Mr. Chaisse apparently recognized Mr. Matos when he testified during the Petitioner's trial on January 21, 1993.
The Petitioner testified that he discharged Attorney Kostecki as his counsel after he was sentenced by the court. The Petitioner testified that Attorney Kostecki never explained any appellate procedures to him. The Petitioner also testified that Attorney Kostecki did not file any motions with the court relative to Pedro Matos. The Petitioner stated he never received a copy of Exhibit one which was a Motion for Extension of Time to file a Motion for a new trial filed by Attorney Kostecki on April 7, 1993.
Attorney Mark Phillips testified as an expert witness for the Petitioner. He stated he was licensed to practice law in Connecticut and New York and had been an attorney since November 1990. He stated that he reviewed the sentencing transcript of CT Page 7812 March 19, 1993 and spoke about the case with the Petitioner's present attorney.
At the sentencing hearing the Petitioner made a statement to the court which included the following:
 I would like to share some information that has come to my attention. That being one of the jurors, Pedro Matos, lied. He had known and done work on my sister and brother-in-law's house before trial. His family lives on 36 Rose Street, first floor, underneath my sister. He avoided going there during trial. Since I have been convicted he has been going there a lot. He also has been bothering my girlfriend, following my sister. That leads me to believe something more than righteous has been done throughout this trial. I could produce witnesses to the facts pertaining to Pedro Matos. And I would ask leniency before deciding.
Thank you for hearing me.
The Court answered:
THE COURT: Thank you, Mr. Laccone. Please be seated.
 Mr. Laccone, what you say about Mr. Matos, the juror Pedro Matos, if you wish to make that a basis of a motion for a new trial you are free to do so. But, the present proceeding concerns your sentence.
MR. LACCONE: Yes, sir, I understand.
Attorney Phillips testified that under State v. Brown,235 Conn. 502 (1995) the trial Judge had a responsibility to hold a hearing sua sponte into the allegation of juror misconduct. Attorney Phillip also testified that the Petitioner's trial counsel should have made a Petition for a new trial under Connecticut General Statute § 52-570; or made a motion for a new trial under section 904 of the Connecticut Practice Book; or brought the issue up on appeal; or asked the trial judge for a hearing on the Petitioner's allegation. It should be noted here that both the Brown Case and its predecessor at 232 Conn. 431
(1995) were published almost two years after the verdict in the Petitioner's case. CT Page 7813
The Court viewed a tape of 36 Rose Street, Waterbury, Connecticut (Exhibit C). This tape was taken by the Petitioner's mother on Christmas Day 1991. The purpose of the tape was to show that Cynthia Mosman was lying when she testified in the Petitioner's trial as to what she saw and when she saw it. The Petitioner claims that Attorney Kostecki was negligent when he did not show this tape to the jury. Attorney Mark Kostecki testified in this matter. He stated he reviewed the aforementioned tape on more than one occasion. He testified he received the tape from the Petitioner's mother shortly after his arrest and he kept it until after the Petitioner was sentenced. Attorney Kostecki said his purpose in looking at the tape was to view the condition of victim, Samantha Daigle, a young child. He stated that the Petitioner's defense was that the victim was injured prior to December 24, 1991 and that as a result she was in a stumbling kind of state with some injuries. Attorney Kostecki said he also had some "still" pictures of the victim. He testified that the "still" pictures showed injuries to the victim. He stated the tape did not in his opinion show that the victim had any injuries or that she was in a stumbling state. Therefore he did not use it for that purpose. He testified he did not use it to show Cynthia Mosman was not telling the truth because in his opinion it was not necessary as he believed the point that she could not have seen what she said she saw was already made to the jury.
Attorney Kostecki testified that the first time he learned that the juror Pedro Matos might know the Petitioner's sister's family was on the date of sentencing. He then testified on cross-examination that at the voir dire the Petitioner said something to him about Pedro Matos such as, "he looks familiar" or some such statement. However the Petitioner testified that he did not know Mr. Matos at all and never saw him before his trial. Attorney Kostecki testified that he consulted with the Petitioner when he accepted Mr. Matos as a juror. He thought the Petitioner wanted Mr. Matos as a juror. Attorney Kostecki testified that he definitely wanted Mr. Matos on the jury because he was himself (Matos) a defendant in a family violence case in the past, he was male and a member of a minority group. Attorney Kostecki said at some point in the trial the Petitioner became unhappy with Mr. Matos. Attorney Kostecki stated he did not move to remove Mr. Matos from the jury because he had no evidence of juror misconduct. Attorney Kostecki testified that at the sentencing hearing the Petitioner thought that the mother of the juror, Pedro Matos, had something to do with his (Petitioner's) sister's CT Page 7814 family. Attorney Kostecki testified that he told the State's Attorney about this and that they then both went to see the trial judge in his chambers. According to Attorney Kostecki the trial judge told them if the Petitioner's allegations were true he could file some post trial motions.
There was no evidence presented at this hearing that even comes close to proving juror misconduct in the Petitioner's trial. Neither the Petitioner's sister or brother-in-law testified in this hearing even though the court accommodated the Petitioner's attorney as to when they would be called to testify. All this court has in front of it concerning juror misconduct is the Petitioner's statement set forth hereinbefore to the judge on the day of sentencing. The Petitioner at that time was a convicted felon facing a substantial period of incarceration. The Petitioner relies on the cases of State v. Brown, 235 Conn. 502
(1995) and State v. Newsome, 238 Conn. 588 (1995) to support his claims for a new trial. The Brown case holds that henceforth a trial court must conduct an inquiry whenever it is presented with any allegations of jury misconduct in a criminal case regardless of whether an inquiry is requested by counsel. State v. Brown,235 Conn. 502 (1995).
The trial judge plays a crucial role in ensuring that a criminal defendant receives a fair trial by an impartial jury, and must be ever vigilant, throughout the course of the trial, to guard against jury partiality. "In a criminal trial, the judge is more than a mere moderator of the proceedings. It is [the judge's] responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. State v. Echols,170 Conn. 11, 13, 364 A.2d 225 (1975)." (Internal quotation marks omitted.) State v. Brigandi, supra 186 Conn. 543; see State v.Bausman, 162 Conn. 308, 312, 294 A.2d 312 (1972). "`The jury room cannot be guarded with too much vigilance and jealousy. Courts must reject all evidence not received on the trial, and must repel every foreign influence, which may affect the minds of the jury.'" Esaw v. Friedman, 217 Conn. 553, 559, 586 A.2d 1164
(1991), quoting Clark v. Whitaker, 18 Conn. 543, 549 (1847).
We recognize that the trial judge has a superior opportunity to assess the proceedings over which he or she personally has presided; State v. Ross, supra, 230 Conn. 227; State v.Rodriguez, supra, 210 Conn. 326; and thus is in a superior position to evaluate the credibility of allegations of jury CT Page 7815 misconduct, whatever their source. There may well be cases, therefore, in which a trial court will rightfully be persuaded, solely on the basis of the allegations before it and the preliminary inquiry of counsel on the record, that such allegations lack any merit. In such cases, a defendant's constitutional rights may not be violated by the trial court's failure to hold an evidentiary hearing, in the absence of a timely request by counsel. IBID 527, 528.
It is well established, however, that not every incident of juror misconduct requires a new trial (citations omitted). The question is "`whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.'"State v. McCall, supra, 187 Conn. 77, quoting United States v.Klee, supra, 396. The defendant has been prejudiced if "`the misbehavior is such to make it probable that the juror's mind was influenced by it so as to render him or her an unfair and prejudicial juror.'" Williams v. Salamone, 192 Conn. 116, 122,470 A.2d 694 (1984). "We have previously held that, in cases where the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. (citations omitted). Where, however, "the trial court was in no way responsible for the juror misconduct, we have repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct. (citations omitted). State v.Newsome, 238 Conn. 588, 627, 628 (1996).
In this case the Petitioner had the burden of proving that actual prejudice resulted from that alleged misconduct. He has not sustained his burden because he could not as there was no proof whatsoever of juror misconduct.
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992). Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170,174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance CT Page 7816 was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v. Warden, supra; Hullv. Warden, supra; Copas v. Warden, supra, 683-84.
"`To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (citations omitted; internal quotation marks omitted). Siano v. Warden,
supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55."Davis v. Warden, 32 Conn. App. 296, 301-303, 629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993). Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701, 702 (1995).
After hearing the evidence this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition specifically as to Counts one and four therein filed September 27, 1996. He has not proved that his counsel's representation of him was deficient. Further he has not proved that he was prejudiced by his attorney's representation of him.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge CT Page 7817