[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, by counsel, has filed an amended petition for a writ of habeas corpus. The petition is based on alleged ineffective assistance of trial counsel.
On March 21, 1996, after a jury trial in Docket # CR 93-0383064, New Haven Judicial District, the petitioner was found guilty of assault in the first degree in violation of C.G.S. § 53a-59 (a) (1), conspiracy to commit assault in the first degree in violation of C.G.S. 53a-48 (a), and 53a-59 (a) (1), and carrying a pistol without a permit in violation of C.G.S. § 29-35. On May 5, 1996, he was sentenced to a total effective sentence of twenty years. The petitioner was represented at trial by Attorney Thomas Farver.
He claims that he was denied his right of effective assistance of counsel, in violation of his state and federal constitutional rights, in that his counsel failed to properly and adequately prepare the case because he failed to:
1) determine and develop the petitioner's version of the facts;
2) investigate the relevant facts and witnesses;
3) interview the relevant witnesses;
4) utilize available means of discovery;
5) communicate with the petitioner regarding what was occurring; and
6) communicate with the petitioner regarding the petitioner's options.
The convictions were affirmed by the Appellate Court which summarized the facts as follows:
CT Page 13197
On August 1, 1993, the victim, Anibal Torres, and his brother drove his girlfriend Christine Barker, and her two year old daughter, Emily, to 63 Winthrop Avenue in New Haven where the defendant lived with his parents and five brothers. The defendant is Emily's father. Barker was bringing Emily to visit with her grandmother, the defendant's mother. Barker was romantically involved with the defendant previously, but after Emily was born she had left the' defendant to date the victim. She resumed her relationship with the defendant, however, while pregnant with the victim's son, but returned to the victim after the birth of his son. The victim and the defendant had been on poor terms since Barker had broken up with the defendant and became pregnant by the victim.
 The victim parked his car across the street from the defendant's home on Winthrop Avenue, and he and his brother remained in the car. Barker got out of the car with Emily, crossed Winthrop Avenue and knocked on the front door, which was answered by Emily's grandmother. At that time, the defendant, his brothers Frank Cepeda and Luis Cepeda, his uncle and another individual went across Winthrop Avenue toward the car in which the victim was sitting. The victim testified that they said that they were "going to fight me." The victim got out of his car and a fight started. The victim hit the defendant, who fell down, and all of the men started fighting in the street. The defendant "screamed" for someone "to get the gun." The defendant's uncle went into the house, came out with a small grayish-black handgun and fired a shot toward the victim. During this melee, the uncle approached the victim's brother, who was being held down on the ground by the defendant's brothers Frank and Luis, and pointed the gun at his head. Barker moved into the street, and pushed the uncle with the gun away from the victim's brother. As she did so, the "gun went off and nothing came out," having apparently jammed. The defendant then obtained the handgun from his uncle.
The victim's brother stabbed the defendant's brother, Frank Cepeda, in the leg with a knife, which caused a minor wound to his thigh. The victim ran toward his car and, as he was attempting to get in, the defendant CT Page 13198 fired at least two shots at the victim. Two bullets struck the victim. On bullet passed through his left arm and another penetrated his chest fracturing his fourth thoracic vertebra.
 Two brothers, Demetrius Coban and Joel Coban, who had been walking their dog in the area, witnessed the incident. They each saw the defendant point the handgun toward the victim and fire two shots. The victim's brother and Barker helped him into the car and drove him to Yale-New Haven Hospital.
 The jury heard and observed fourteen witnesses called by the state and seven witnesses called by the defense. The state also called another witness on rebuttal. The defendant did not take the witness stand.
State v. Cepeda, 51 Conn. App. 409, 412-413 (1999).
This court heard this case on July 30, 2002. The only witnesses at the trial were the petitioner and Mr. Farver. The transcript of the trial, the sentencing proceeding and the decision of the Appellate Court were offered as exhibits.
The burden of proof which the petitioner has in a claim of ineffective assistance of trial counsel is clear.
In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. Phillips v. Warden, 220 Conn. 112, 132, 595 A.2d 1356 (1991). Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. Denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). In this context, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," does not require the CT Page 13199 petitioner to show that "counsel's deficient conduct more likely than not altered the outcome of in the case." Id., 693. Rather, it merely requires the petitioner to establish "a probability sufficient to undermine confidence in the outcome." Id., 694.
Bunkley v. Commissioner of Correction, 222 Conn. 444, 446. (1992).
In his testimony at the habeas trial the petitioner described his contacts with Mr. Farver. It was his claim that Mr. Farver did not ask him for his version of the facts, but he then testified that he told the attorney that his uncle did the shooting. He didn't know whether Mr. Farver did anything with this information. He claimed that Mr. Farver did not review either the police reports or witness statements with him at any time. He did not know whether Mr. Farver contacted any witnesses or whether an investigator was hired. He did not know whether any efforts were made to locate his uncle. In view of the fact that the primary claim of the petitioner at trial was that the uncle, and not the petitioner, did the shooting, it is not believable that the petitioner was unaware of the efforts to locate his uncle. The petitioner was not a credible witness.
In his brief, the petitioner points to the testimony of several witnesses in an attempt to prove ineffective assistance of counsel. The first two witnesses referred to in the brief were Anibal Torres and Ruth Pelliter. However, the brief does not indicate in what way Mr. Farver was deficient with respect to these witnesses.
The next witness referred to is Demetrius Coban. Mr. Coban had given an earlier statement that was exculpatory as to the petitioner. At trial he gave inculpatory evidence and was cross examined at length by Mr. Farver on the variance. The earlier statement was admitted in evidence as a full exhibit.
The brief next refers to the testimony of Joel Coban and claims that Mr. Farver failed to investigate regarding the Coban brothers' motive to testify against the petitioner. Mr. Farver did question the witness on this subject and what further investigation might have produced is total speculation.
The next witness mentioned in the brief is Christine Barber. It is suggested that Ms. Barber and the petitioner had a dispute over the paternity of her child. At the habeas hearing, the petitioner testified that he was upset because Ms. Barber had given the victim's child the first name of Ivan, which is the petitioner's name. Mr. Farver testified CT Page 13200 that the paternity of the child was never in dispute.
The brief then refers to the testimony of Richard Pelliter, who was a defense witness and who testified that he saw the petitioner's uncle fire the gun. It is claimed that Mr. Farver did not "properly prepare" the witness for testimony. What the witness would have said if he had been "properly prepared" is not indicated. There was no evidence at the habeas hearing as to how this would have changed or improved the witnesses' testimony.
The last witness mentioned in the brief is Detective Joseph Greene who testified that he did not test for gunpowder residue and that he was not aware of such a test. Detective Green testified that if such a test had been done it would be by another detective who was in charge of the crime scene. The adequacy of the police investigation in this case was a matter for the jury and it is total speculation as to what the results of such a test would have been.
A review of the transcript of the testimony of the several witnesses mentioned in the petitioner's brief does not disclose anything that supports the claim that Mr. Farver was deficient in his representation of the petitioner.
Mr. Farver testified in detail about his representation of the petitioner. The court finds that he was a credible witness and accepts his testimony. Mr. Farver is an experienced criminal defense attorney. He was not appointed as the petitioner's attorney until December, 1995, having succeeded prior counsel. He had difficulty in contacting the petitioner who was free on bond and living out of state. Telephone numbers provided to him were out of service. He eventually obtained an address and notified the petitioner by mail that his trial was scheduled to begin on February 13, 1996. The voir dire commenced on that date but the evidentiary phase of the trial did not begin until March 12, 1996. Before the evidence started he met regularly with his client reviewing the case. He had the assistance of an investigator from the Public Defender's Office who met with him and the petitioner. He met with witnesses and the petitioner's family. He and the petitioner prepared a map which reflected the scene, and where cars and various people were allegedly located. Since it was the petitioner's claim that his uncle did the shooting, a great deal of effort and time went into trying to locate the uncle, who had fled the scene of the shooting. Despite extensive efforts by Mr. Farver, members of the petitioner's family, and the investigator, the uncle could not be located. There was no evidence offered in the habeas trial as to what the uncle would have testified to had he been located or whether or not he would have invoked his 5th Amendment right not to CT Page 13201 testify. The investigator canvassed the neighborhood of the shooting and several witnesses were located who were called by Mr. Farver as defense witnesses. Mr. Farver explained to the petitioner how the trial would proceed and specific details of trial strategy. The subject of the petitioner testifying or not was discussed, the petitioner elected not to testify, and he was canvassed by the court on his election. There were no plea negotiations because the petitioner was not interested in a plea. As a result of the investigator's efforts, the defense was able to produce witnesses who testified that the petitioner was not the person who shot the victim. The transcript of the trial demonstrates that Mr. Farver conducted an exhaustive and aggressive defense of his client. He was in close communication with his client throughout the trial and kept his client fully advised of all developments. He or the investigator followed up on all suggestions made by the petitioner.
The court finds that the petitioner has failed to prove that Mr. Farver was deficient in his representation of the petitioner in this case. In addition to not proving deficient performance the petitioner has offered no evidence to establish that as a result of his attorney's performance he has suffered actual prejudice.
Accordingly, for the reasons set forth above, the petition for a writ of habeas corpus is denied.
William L. Hadden, Jr. Judge Trial Referee CT Page 13202